Harry NMI PERRY; Robert Newman, aka: "Jingles", Plaintiffs–Appellants,

v.

LOS ANGELES POLICE DEPARTMENT; City of Los Angeles; Jane Doe Rodriguez, Police Officer; Frank Montelongo; Willie L. Williams, Chief of Police, Defendants–Appellees.

No. 96–55545.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 4, 1997.

Decided Aug. 25, 1997.

---

1366

James H. Fosbinder and Rhonda M. Fosbinder, Fosbinder & Fosbinder, Venice, CA, for plaintiffs–appellants.

James K. Hahn, City Attorney, Frederick N. Merkin, Senior Asst. City Attorney, and Vivienne A. Swanigan–Crenshaw, Deputy City Attorney, Los Angeles, CA, for defendants–appellees.

Before: HALL and T. G. NELSON, Circuit Judges and WINMILL, District Judge.*

CYNTHIA HOLCOMB HALL, Circuit Judge:

Plaintiffs appeal from the district court's judgment for defendants as a matter of law following the presentation of plaintiffs' evidence in a bench trial. This court has jurisdiction pursuant to 28 U.S.C. § 1291. We find Los Angeles Municipal Code § 42.15 facially unconstitutional and REVERSE the judgment of the district court.

I. Facts

Plaintiff Perry is a musician and performance artist who solicits donations for his

---

* The Honorable B. Lynn Winmill, United States District Judge for the District of Idaho, sitting by designation.

performances and sells recordings of his music. He is a member of the Sikh religion, and his musical lyrics include excerpts from the Holy Book of his religion and imply religious content.

Plaintiff Newman is an activist who, on behalf of the "Animal Freedom Fighters," an unincorporated group of individuals, solicits donations and distributes messages regarding animals' rights through the sale of literature, books, t-shirts, bumper stickers, buttons, and other articles bearing political slogans, such as "Meat is Murder."

Defendants are the Los Angeles Police Department ("LAPD"), the City of Los Angeles ("the City"), and officers of the LAPD responsible for enforcing Los Angeles Municipal Code § 42.15, which plaintiffs contend is unconstitutional.

Section 42.15 provides, "No person shall hawk, peddle or vend any goods, wares or merchandise, or beg or solicit alms or donations upon" any sidewalk, boardwalk, or public way adjoining a specified length of the Pacific Ocean, including the area known as the Venice Beach Boardwalk ("Boardwalk").

There are two exceptions to this prohibition. One is for the sale of newspapers, magazines, periodicals "or other printed matter commonly sold or disposed of by newsboys or news vendors." The second is for "the solicitation of donations by a non-profit organization [and] the sale of merchandise by a non-profit organization constituting, carrying or making a religious, philosophical or ideological message or statement relevant to the purpose of said non-profit organization." The exception for non-profit organizations was added in 1991 in response to this circuit's decision in *Gaudiya Vaishnava Soc. v. City of San Francisco*, 952 F.2d 1059 (9th Cir.1990).

In 1995, both plaintiffs were told by members of the LAPD that they must provide documentation of nonprofit status to continue their activities. Each was given a citation for violation of § 42.15.

The plaintiffs claim that § 42.15 infringes on fundamental First Amendment rights, in violation of the Equal Protection Clause. They challenge section 42.15 as facially un-constitutional, vague and overbroad in that it prohibits political, religious, and other expressive activities.

The district court granted a temporary restraining order on May 8, 1995, enjoining enforcement of the ordinance against individuals who were engaged in expressive activity, while allowing enforcement of the ordinance against vendors engaged in purely commercial sales, such as food.

At a bench trial, plaintiffs presented witnesses Perry and Newman, who testified to the types of goods they sold and the activities for which they solicited donations. At the close of plaintiffs' case, the defendants moved for judgment on partial findings pursuant to Fed.R.Civ.P. 52(c).

The district court granted defendants' motion, adopting the findings of fact and conclusions of law prepared by defendants. In doing so, the court found the following facts: plaintiffs sell wares that are inextricably intertwined with the political, religious, sociological, and ideological messages they contain; the ordinance prohibits the sales of plaintiffs' expressive works; the City has a substantial interest in protecting local merchants from unfair competition and in attracting and preserving business; the City also has a substantial interest in limiting the number of sellers along the Boardwalk to insure the free flow of traffic. The district court concluded that, as a matter of law, the wares plaintiffs sell are fully protected by the First Amendment; section 42.15 is not content based; and section 42.15 is a reasonable time, place and manner restriction on the fully protected speech, citing *One World One Family v. City and County of Honolulu*, 76 F.3d 1009 (9th Cir.1996). Accordingly, it entered judgment for defendants.

Plaintiffs objected to these findings of facts and law, and the district court rejected those objections. Plaintiffs appeal.

## II. Standard of Review

■ This court reviews a judgment as a matter of law de novo. *Pierce v. Multnomah County*, 76 F.3d 1032, 1037 (9th Cir. 1996). Constitutional issues are reviewed de novo. *United States v. Wunsch*, 84 F.3d

1110, 1114 (9th Cir.1996). A district court's determinations on questions of law and on mixed questions of law and fact that implicate constitutional. rights are reviewed de novo. *American–Arab Anti–Discrimination Comm. v. Reno,* 70 F.3d 1045, 1066 (9th Cir.1995).

III. Analysis

A. Facial Challenge

■ In First Amendment overbreadth cases, courts allow litigants to "challenge a statute by showing that it substantially abridges the First Amendment rights of other parties not before the court." *Village of Schaumburg v. Citizens for a Better Environment,* 444 U.S. 620, 634, 100 S.Ct. 826, 834, 63 L.Ed.2d 73 (1980). This is because of "the possibility that protected speech or associative activities may be inhibited by the overly broad reach of the statute." *Id.* Because plaintiffs' claims are rooted in the First Amendment, they may argue the impact of the ordinance on their own expressive activities, as well as the expressive activities of others. *Schad v. Borough of Mount Ephraim,* 452 U.S. 61, 66, 101 S.Ct. 2176, 2181, 68 L.Ed.2d 671 (1981). Thus, plaintiffs may bring a facial challenge to this ordinance.

B. Fully Protected Speech

■ We must first decide whether the activities involved here are accorded full protection under the First Amendment.

There is no dispute that these activities take place in a public forum-a place that has "immemorially been held in trust for the use of the public ... for purposes of assembly, communicating thoughts between citizens, and discussing public questions." *Hague v. Committee for Indus. Org.,* 307 U.S. 496, 515, 59 S.Ct. 954, 963, 83 L.Ed. 1423 (1939). The Supreme Court has repeatedly recognized public streets as "the archetype of a public forum." *Frisby v. Schultz,* 487 U.S. 474, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988).

The items sold here include music, buttons, and bumper stickers bearing political, religious, and ideological messages. These are expressive items, and they do not lose their constitutional protection simply because they

are sold rather than given away. *Heffron v. International Society for Krishna Consciousness,* 452 U.S. 640, 647, 101 S.Ct. 2559, 2563, 69 L.Ed.2d 298 (1981); *see also Schaumburg,* 444 U.S. at 633, 100 S.Ct. at 834; *Gaudiya,* 952 F.2d at 1064–65.

In *Riley v. National Federation of the Blind of North Carolina,* 487 U.S. 781, 108 S.Ct. 2667, 101 L.Ed.2d 669 (1988), the Supreme Court found that where the commercial and expressive parts of speech are "inextricably intertwined," a court could not parcel out the protected and unprotected parts of the speech. This court has applied the "inextricably intertwined" standard to merchandise like that at issue here; the *Gaudiya* court found that the plaintiffs' street sale of merchandise with messages affixed to the products was fully protected because the commercial and noncommercial aspects of speech "inextricably intertwined." *Gaudiya,* 952 F.2d at 1064–65; *see also One World,* 76 F.3d at 1012 (finding sale of merchandise bearing political, religious, philosophical or ideological messages "inextricably intertwined" with other forms of protected expression).

Plaintiffs' expressive activities are of the same type found to be fully protected in *Gaudiya* and in *One World* and are fully protected by the First Amendment.

C. Government Restriction on Speech

■ Because the First Amendment fully protects the activities at issue here, the question is whether the government has placed a legitimate restriction on these activities. The government restriction banning sales and solicitations of donations contains an exception for non-profits. When a government allows some forms of protected speech but prohibits other forms of protected speech, the Equal Protection Clause is implicated, and the government must show that the distinctions are "finely tailored to serve substantial state interests." *Carey v. Brown,* 447 U.S. 455, 461–62, 100 S.Ct. 2286, 2290–91, 65 L.Ed. 2d 263(1980).

■ In a traditional public forum, time, place, and manner restrictions on protected speech are acceptable only if they are con-

tent neutral, "serve a significant state interest in a narrowly tailored fashion," and "leave open ample alternative communication channels." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45, 103 S.Ct. 948, 954, 74 L.Ed.2d 794 (1983); *see also Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293, 104 S.Ct. 3065, 3068, 82 L.Ed.2d 221 (1984). We examine each requirement in turn.

### 1. Content Neutral

 A regulation is content neutral if it is "justified without reference to the content of the regulated speech." *Clark*, 468 U.S. at 293, 104 S.Ct. at 3068. The restriction here does refer to the content of speech; it permits non-profit organizations to sell items "constituting, carrying or making a religious, political, philosophical or ideological message or statement *relevant to the purpose of said non-profit organization.*" A police officer enforcing this restriction would have to look to the content of a non-profit organization's sales to determine whether it was relevant to the organization's purpose. Appellants argue that this part of the exception makes the ordinance content based.

However, the actual ban on sales and solicitation of donations makes no reference to content. The exception for non-profits, which is arguably content-based, was added in 1991 in an effort to bring the statute in compliance with this court's decision in *Gaudiya*. There is no evidence that the government adopted the restriction "because of disagreement with the message it conveys." *Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S.Ct. 2746, 2753, 105 L.Ed.2d 661 (1989). Thus, we will proceed under the assumption made by the district court that the ordinance is content neutral.

### 2. Significant State Interest

 The government asserts a state interest in protecting local merchants from unfair competition and in ensuring the free flow of traffic along the Boardwalk.

A government interest in protecting the safety and convenience of persons using a public forum is a valid government objective. *See Heffron*, 452 U.S. at 650, 101 S.Ct. at 2565. Government interests in promoting public safety and the orderly movement of pedestrians, and in protecting the local merchant economy are also substantial. *One World*, 76 F.3d at 1013. Thus, the interests articulated by the City here are significant state interests.

### 3. Narrowly Tailored

 Next, the court must examine whether the ordinance is narrowly tailored to serve the interests of protecting local merchants and aiding free traffic flow. This is where the defendants' argument fails.

Even when the government's interests are substantial, the means chosen to effectuate them must be narrowly tailored. In the area of free expression, "[b]road prophylactic rules ... are suspect. Precision of regulation must be the touchstone ..." *Schaumburg*, 444 U.S. at 637, 100 S.Ct. at 836 (citations omitted). A government may serve its legitimate interests, but "it must do so by narrowly drawn regulations designed to serve those interests without unnecessarily interfering with First Amendment freedoms." *Id.* (citations omitted). The ordinance here falls short of meeting this standard.

In *Carey v. Brown*, the Court invalidated an ordinance that prohibited picketing in residential areas, where the ordinance excepted picketing regarding labor issues. 447 U.S. 455, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980). While the Court acknowledged the State's substantial interest in protecting residential privacy, there was "nothing inherent in the nature of peaceful labor picketing that would make it any less disruptive of residential privacy than peaceful picketing on issues of broader social concern." *Id.* at 466, 100 S.Ct. at 2292. Even though the ordinance served the government interest by reducing the total number of picketers, the distinction used to effectuate the reduction was not narrowly tailored to the government interest.

In *City of Cincinnati v. Discovery Network*, the Supreme Court invalidated an ordinance that permitted newsracks on public streets for newspapers, but did not permit them for commercial handbills. 507 U.S.

410, 113 S.Ct. 1505, 123 L.Ed.2d 99 (1993). The Court accepted the government's legitimate interest in safety and esthetics on city streets, and the proposition that less newsracks would aid that interest. However, the Court found no basis for distinguishing between the newsracks containing newspapers and those containing commercial handbills. It found that the newsracks containing commercial handbills "are no more harmful than the permitted newsracks." *Id.* at 418, 113 S.Ct. at 1510. This was an "insufficient justification for the discrimination" against the commercial use of newsracks. *Id.* Because each type of paper contributed equally to the safety and esthetic concerns generated by newsracks on public streets, the ordinance was not sufficiently tailored to the city's significant interests.

In *Schaumburg,* the Supreme Court invalidated an ordinance prohibiting door-to-door solicitations by charitable organizations unless the organization used at least 75% of its receipts for charitable purposes. The Court found that the justifications given by the government for limiting the total number of door-to-door solicitations were valid, but that the distinction between the groups who could solicit and those who could not solicit was not sufficiently tailored to serve those purposes. The Court found that the ordinance advanced the significant government purpose of protecting residential privacy because it reduced the total number of door-to-door solicitations. However, the means chosen to effectuate this reduction were not narrowly tailored to the articulated interest, absent a showing that groups giving less than 75% of their money to charitable purposes were any more of an intrusion than those giving more than 75% of their money. The Court further noted that genuine concerns about preventing fraud and harassment were already sufficiently covered by other statutes.

Here, we are faced with the same issue as that in *Carey, Discovery Network,* and *Schaumburg*-whether the means the government uses to discriminate are narrowly tai-lored to fit its interests. The City has a legitimate interest in protecting merchants from unfair competition and in aiding the free flow of traffic. A decrease in the total number of vendors on the Boardwalk would aid that interest. However, there is no justification for eliminating only those individuals with no nonprofit affiliation. There is no evidence that those without nonprofit status are any more cumbersome upon fair competition or free traffic flow than those with nonprofit status. There is no justification for allowing those with membership in a nonprofit organization to sell items and solicit donations, while disallowing those with no nonprofit membership from the same activities. The regulation, like those in *Schaumberg, Carey,* and *Discovery Network,* is not narrowly tailored enough to pass muster.

Defendants attempt to explain their discrimination based on nonprofit status. The non-profit requirement, they claim, provides a simple method of determining whether or not a person is engaged in commercial activity, and of determining the goals or message of the solicitor or seller. This argument fails because plaintiffs' activities here are not purely commercial, but rather "inextricably intertwined" with expressive activities; as such, they are fully protected First Amendment activities. Plaintiffs here do not have non-profit status; thus, a lack of non-profit status cannot reasonably be a predictor of purely commercial activity.[1]

Defendants also point to the fact that the *Gaudiya* plaintiffs were non-profit. However, *Gaudiya* stands for the proposition that a government official cannot have unbridled discretion to decide who may engage in protected activities in a public forum. While the *Gaudiya* plaintiffs were non-profits, none of the *Gaudiya* reasoning turned on this fact. While we are sympathetic to defendants' attempt to alter its statute to comply with *Gaudiya,* we cannot rely on their good intentions to replace constitutional requirements.

---

1. Defendants also argued to the district court that plaintiff Newman could easily obtain nonprofit status and thus continue his activities along the Boardwalk, again admitting that there is no substantive difference between Newman's activities and those of non-profits. This argument contradicts the argument they now make that there is a nexus between people with no nonprofit affiliation and unprotected commercial activities.

Defendants' argument implies that plaintiffs' expressive activities should be accorded less protection than they would if those same activities were conducted by non-profit organizations. This type of speaker-based discrimination is unacceptable. In *Schaumburg*, the Court found that the solicitation of charitable donations could not be regulated by a distinction based on *who* was doing the soliciting. The Court has also noted that "government regulation may not favor one speaker over another." *Rosenberger v. Rector and Visitors of the University of Virginia*, 515 U.S. 819, 828, 115 S.Ct. 2510, 2516, 132 L.Ed.2d 700 (1995). The government's argument that prohibition of expressive speech can turn on a person's membership in a non-profit organization fails.

There is simply no authority limiting the right to seek charitable donations or to sell expressive items to those with memberships in non-profit organizations. No other First Amendment rights are restricted in such a manner. Once it is decided that the activity here is expressive activity, fully protected by the First Amendment, the fact that plaintiffs are not nonprofit organizations does not affect the level of protection accorded to their speech.

The district court relied on *One World* to find the ordinance here a valid time, place or manner restriction. Accordingly, appellees rely primarily on *One World* to support their case. However, in *One World*, the restriction did not discriminate against certain types of speech depending on the speaker. In fact, in *One World*, when the court analyzed whether the ordinance was narrowly tailored, it reasoned that the ordinance was narrowly tailored because it addressed the government interests "without ... significantly restricting a substantial quantity of speech that does not create the same evils." 76 F.3d at 1014 (citing *Ward*, 491 U.S. at 799 n. 7, 109 S.Ct. at 2758 n. 7). Here, defendants claim to be prohibiting the evil of commercial activity by prohibiting all soliciting of donations and sales by anyone not affiliated with a nonprofit. However, the nonprofit distinction significantly restricts a substantial quantity of speech-namely expressive speech by people who are not non-

profit members-that does not create the same evils as purely commercial activity on the Boardwalk-which is what the government admittedly wants to restrict. Thus, applying the reasoning of *One World*, rather than merely looking to its result, one can see that the ordinance at issue here is not narrowly tailored to serve government interests.

Appellees also point to *City of New Orleans v. Dukes*, which upheld an ordinance distinguishing between food vendors. However, this case is inapposite. 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976). The Court applied the rational basis test, as there were no First Amendment rights implicated in the selling of food. As such, the distinction was upheld because it was not "wholly arbitrary." *Id.* at 304, 96 S.Ct. at 2516. Here, the ordinance prohibits plaintiffs from participating in constitutionally protected expressive speech. Thus, the rational basis test applied in *Dukes* does not apply.

A reasonable time, place and manner restriction need not be the least restrictive alternative available, "[s]o long as the means chosen are not substantially broader than necessary to achieve the government's interest." *Ward*, 491 U.S. at 800, 109 S.Ct. at 2758. The ordinance, as it stands, is not sufficiently tailored to the government interest it purports to advance. Therefore, it is constitutionally deficient on its face.

## IV. Conclusion

The statute at issue· here is overbroad. Given the significant state interests of the City, the statute is overly inclusive because it prohibits ʼnot only purely commercial activities, but also protected expressive activities, like those of plaintiffs here. Because the distinction between expressive activities by members of nonprofit organizations and expressive activities by others is not narrowly tailored to advance the government's interests, the statute is unconstitutional on its face.

Because the distinctions made in the ordinance implicate fundamental First Amendment rights, and they are not narrowly tai-

lored to the City's significant government interests, we REVERSE.