152 F.3d 1136
 26 Media L. Rep. 2199, 98 Cal. Daily Op. Serv. 6353,
98 Daily Journal D.A.R. 8799
 S.O.C., INC.; Richard Soranno; Hillsboro Enterprises,
Inc., Plaintiffs-Appellants,
and
American Civil Liberties Union, Intervenor-Appellant,
v.
COUNTY OF CLARK; Las Vegas Metro Police Department;
Lorraine Hunt; Myrna Williams; Erin Kenney; Bruce
Woodbury; Yvonne Atkinson Gates; Lance Malone; Mary
Kincaid; Mirage Casino-Hotel, Defendants-Appellees,
and
Nevada Resort Association; Flamingo Hilton Corporation;
The Mirage Casino-Hotel; Circus Circus
Enterprises, Inc.; Las Vegas Convention
and Visitors Authority,
Intervenors-Appellees.
 No. 97-15912.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 11, 1998.
Decided Aug. 14, 1998.
 
 Dominic P. Gentile and JoNell Thomas, Gentile & Thomas, Las Vegas, Nevada, for plaintiff-appellant S.O.C., Inc.
 Stephen Stein, Las Vegas, Nevada, for plaintiff-appellant Hillsboro Enterprises.
 Allen K. Lichtenstein, Las Vegas, Nevada, for intervenor-appellant ACLU of Nevada.
 David N. Frederick, Lionel, Sawyer & Collins, Las Vegas, Nevada, for defendants-appellees-intervenors-appellees.
 Joseph S. Kistler, Gordon & Silver, (brief only) Las Vegas, Nevada, for amicus curiae Las Vegas Chamber of Commerce.
 Appeal from the United States District Court for the District of Nevada Lloyd D. George, District Judge, Presiding. D.C. No. CV-97-00123-LDG.
 Before: GOODWIN and PREGERSON, Circuit Judges, and GONZALEZ, District Judge.*
 PREGERSON, Circuit Judge:
 
 
 1
 Appellants S.O.C., Inc. ("S.O.C."), Richard Soranno ("Soranno"),[1] and Hillsboro Enterprises, Inc. ("Hillsboro") regularly hire canvassers to distribute leaflets that advertise erotic dance entertainment services.[2] These leaflets were handed-out to tourists and others walking along Las Vegas Boulevard, the area commonly known as the Las Vegas "Strip." Appellants filed suits challenging the constitutionality of Clark County Ordinance Section 16.12 ("Clark County Ordinance"), which prohibits off-premises canvassing in areas surrounding the Las Vegas "Strip" and the Las Vegas Convention Center (collectively referred to as the "Las Vegas Resort District"). The American Civil Liberties Union of Nevada ("ACLUN") intervened in the suit filed by S.O.C. Inc. and raised a facial overbreadth challenge to the Clark County Ordinance. This case comes to us as an appeal from a denial of preliminary injunctive relief and denial of a motion for reconsideration. We have jurisdiction under 28 U.S.C. § 1292(a)(1).
 
 
 2
 We conclude that the ACLUN has demonstrated probable success on the merits on its claim that Clark County Ordinance Section 16.12 is overbroad because it is likely to restrict not only purely commercial speech, but also fully protected noncommercial speech inextricably intertwined with commercial speech. The Ordinance, as written, is content-based. On the record before us, we also find that Clark County has not met its burden of showing that the Ordinance is the least restrictive means to further a compelling governmental interest. Further, even assuming that the Ordinance's restrictions are content-neutral, the available record indicates that the Ordinance is not narrowly tailored to further Clark County's interests in improving the pedestrian environment, maintaining accessible sidewalks, preventing harassment of pedestrians, and reducing litter in the Las Vegas Resort District. At this early stage in the litigation, the time, place, and manner restrictions imposed by the Clark County Ordinance on fully protected speech conducted in a public forum-the sidewalks of Las Vegas-have not been shown to be reasonable. Therefore, we find that the ACLUN has demonstrated probable success on the merits of its claim that Clark County Ordinance Section 16.12 is overbroad and thus unconstitutional on its face. The ACLUN has also demonstrated the possibility of irreparable harm if Clark County Ordinance Section 16.12 is not preliminarily enjoined. Accordingly, we reverse and remand.
 
 BACKGROUND
 
 3
 S.O.C. and Hillsboro are corporations that provide referrals for erotic dance entertainment. Before the Clark County Ordinance was enacted, S.O.C. and Hillsboro regularly hired canvassers to distribute handbills, leaflets, and newspapers advertising erotic dance entertainment services to tourists and others walking along the Las Vegas Strip.
 
 
 4
 On January 21, 1997, following a public hearing, the Clark County Commission adopted Ordinance Section 16.12, which makes it a misdemeanor to engage in "off-premises canvassing"[3] within the Las Vegas Resort District. The Ordinance also permits "owners of private property abutting any public sidewalk located within the resort district" to enforce the provisions of the Ordinance "by an injunction and by any remedy available at law or equity." C.C.C. § 16.12.060. Clark County's stated aims in passing the Ordinance are: (1) to improve the pedestrian environment; (2) to maintain accessible sidewalks; (3) to prevent harassment of pedestrians; and (4) to reduce litter. See C.C.C. § 16.12.010. The Clark County Ordinance exempts the distribution of leaflets placed in authorized newsracks.
 
 
 5
 On January 31, 1997, S.O.C. and Soranno filed suit in the United States District Court for the District of Nevada to enjoin enforcement of the Clark County Ordinance. S.O.C. and Soranno assert that the Ordinance's prohibition of "off-premises canvassing" in the public streets and sidewalks within the Las Vegas Resort District violates the First and Fourteenth Amendments. Clark County and the Las Vegas Metropolitan Police Department are named defendants. The Nevada Resort Association, Flamingo Hilton, Mirage Casino-Hotel, and Circus Circus Enterprises intervened as defendants (collectively referred to as "Casino Intervenors").
 
 
 6
 On February 3, 1997, Hillsboro filed a separate suit also seeking to enjoin enforcement of the Clark County Ordinance. Hillsboro named Clark County and several Clark County Commissioners as defendants. On February 4, 1997, the Las Vegas Convention and Visitors Authority moved to intervene as a defendant in the S.O.C./Soranno suit. On February 13, 1997, the ACLUN moved to intervene as a plaintiff in the S.O.C./Soranno action. That same day, February 13, 1997, the district court conducted a hearing on both preliminary injunction motions. On March 4, 1997, the court entered a single order (with both docket numbers and both case captions). The March 4, 1997 Order granted the motions for intervention and denied both preliminary injunction motions.
 
 
 7
 On March 14, 1997, S.O.C. and Soranno filed a notice appealing the March 4, 1997 order denying their motion for preliminary injunction. Neither Hillsboro nor the ACLUN joined in this motion. On March 17, 1997, Hillsboro filed a motion for reconsideration under Rules 52(b), 59(e), and 60(b) of the Federal Rules of Civil Procedure. The ACLUN joined in this motion. The district court denied the motion for reconsideration on May 9, 1997. On May 14, 1997, S.O.C., Hillsboro, and the ACLUN filed a timely notice appealing: (1) the district court's May 9, 1997 Order denying the motion for reconsideration; and (2) the underlying March 4, 1997 Order denying the motions for preliminary injunction.
 
 ANALYSIS
 A. Jurisdiction
 
 8
 The district court's jurisdiction over the underlying litigation is based on 28 U.S.C. § 1331, federal question jurisdiction. There is no dispute that Hillsboro and the ACLUN filed timely appeals from the May 9, 1997 Order denying the motion for reconsideration. Accordingly, we have jurisdiction under 28 U.S.C. § 1292(a)(1) to review the district court's May 9, 1997 order denying the motion for reconsideration and the underlying March 4, 1997 Order denying a preliminary injunction.[4] Clark County and the Casino Intervenors, however, contend that S.O.C. and Soranno failed to file a timely notice of appeal. Because Hillsboro and the ACLUN raise the same issues as S.O.C. and Soranno, we need not resolve the question of whether S.O.C. and Soranno's joint notice of appeal was timely filed.
 
 B. Standard of Review
 
 9
 To succeed on this appeal from the district court's denial of preliminary injunctive relief, Appellants "must show either (1) a likelihood of success on the merits and the possibility of irreparable injury, or (2) the existence of serious questions going to the merits and the balance of hardships tipping in their favor." Gilder v. PGA Tour, Inc., 936 F.2d 417, 422 (9th Cir.1991). We review a district court's decision to deny a motion for a preliminary injunction for an abuse of discretion. See San Antonio Community Hosp. v. Southern Cal. Dist. Council of Carpenters, 125 F.3d 1230, 1233 (9th Cir.1997), reh'g and suggestion for reh'g and reh'g en banc denied, 137 F.3d 1090 (1998). But we review the legal issues underlying the district court's decision de novo. See Crawford v. Lungren, 96 F.3d 380, 384 (9th Cir.1996), cert. denied, --- U.S. ----, 117 S.Ct. 1249, 137 L.Ed.2d 330 (1997).
 
 C. Discussion
 
 10
 In denying preliminary injunctive relief and the motion for reconsideration, the district court concluded that Clark County Ordinance Section 16.12 imposed permissible restrictions on purely commercial speech. Commercial and noncommercial speech are protected under the First Amendment. See Village of Schaumburg v. Citizens for a Better Env't, 444 U.S. 620, 633 n. 7, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980). The Constitution, however, accords less protection to commercial speech than to other constitutionally safeguarded forms of expression. See Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of New York, 447 U.S. 557, 563, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980). On appeal, Appellants and the ACLUN contend that the district court erred in reviewing the constitutionality of Clark County Ordinance Section 16.12 as a commercial speech regulation.[5] Specifically, Appellants and the ACLUN contend that the Clark County Ordinance is facially unconstitutional because it seeks to regulate not only purely commercial speech but fully protected noncommercial speech that is inextricably intertwined with commercial speech, i.e., that the Ordinance is overbroad. Assuming the Ordinance regulates fully protected speech, the parties also dispute whether the Ordinance places reasonable time, place, and manner restrictions on such speech. In resolving this appeal, we must first decide whether the expressive activities regulated by the Clark County Ordinance are accorded full protection under the First Amendment.
 
 1. Overbreadth
 
 11
 An ordinance may be facially unconstitutional if "it is unconstitutional in every conceivable application, or ... seeks to prohibit such a broad range of protected conduct that it is unconstitutionally 'overbroad.' " See Members of the City Council of the City of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 796, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984). At issue in this appeal is the second type of facial challenge-overbreadth. As a general rule, a litigant has standing only to vindicate his own constitutional rights. See id. The Supreme Court, however, has recognized "an exception to this general rule for laws that are written so broadly that they may inhibit the constitutionally protected speech of third parties." Id. at 798, 104 S.Ct. 2118. In the First Amendment context, the general rule is disregarded "because of the possibility that protected speech or associative activities may be inhibited by the overly broad reach of [a regulation]." Schaumburg, 444 U.S. at 634, 100 S.Ct. 826. Because the ACLUN's claims "are rooted in the First Amendment" the ACLUN has standing to challenge the impact of the Clark County Ordinance as it relates to its own expressive activities, as well as those of others.[6] See Perry v. Los Angeles Police Dept., 121 F.3d 1365, 1368 (9th Cir.1997), cert. denied, --- U.S. ----, 118 S.Ct. 1362, 140 L.Ed.2d 511 (1998). Thus, we turn to the merits of the ACLUN's claim that the Ordinance is overbroad.
 
 
 12
 Appellants and the ACLUN contend that Clark County Ordinance Section 16.12 is overbroad because it prohibits not only commercial speech but also fully protected speech that is "inextricably intertwined" with commercial speech.[7] See Riley v. National Fed'n of the Blind of North Carolina, Inc., 487 U.S. 781, 796, 108 S.Ct. 2667, 101 L.Ed.2d 669 (1988) (stating that "even assuming, without deciding, that such speech in the abstract is indeed merely 'commercial,' we do not believe that the speech retains its commercial character when it is inextricably intertwined with otherwise fully protected speech"). Clark County and the Casino Intervenors argue that the plain language of the Ordinance does not reach beyond purely commercial speech. In support of this contention, Clark County argues that the Ordinance does not reach beyond commercial speech because the definition of "off-premises canvassing" incorporates the factors recognized in Bolger v. Youngs Drug Products Corp., 463 U.S. 60, 66-67, 103 S.Ct. 2875, 77 L.Ed.2d 469 (1983), as characteristic of commercial speech.[8] Although the Clark County Ordinance tracks the language of Bolger,[9] the Ordinance's plain language does not limit the scope of the regulated activity to purely commercial expression. In Bolger, the Supreme Court reiterated that the "core notion of commercial speech" is identified as "speech which does 'no more than propose a commercial transaction.' " Bolger, 463 U.S. at 66, 103 S.Ct. 2875 (emphasis added) (citations omitted). This key limitation is not written into the Clark County Ordinance. The Ordinance does not use any limiting language such as "solely," "exclusively," or "primarily."
 
 
 13
 Neither does it provide exceptions for materials that include both fully protected and commercial forms of expression. See, e.g., Perry, 121 F.3d at 1368 (wherein the governmental restriction banning sales and solicitations of donations contained an exception for charitable corporations). Moreover, the phrase contained in the Ordinance "or otherwise propose one or more commercial transactions" is insufficient to limit its application to those materials that do "no more" than propose a commercial transaction. Again, the explicit terms of the Clark County Ordinance do not limit its restrictions to purely commercial speech. Absent such a limitation, there is a substantial likelihood that the Clark County Ordinance could inhibit the expression of fully protected speech intertwined with commercial speech.
 
 
 14
 Although we consider Clark County's limiting construction of the Ordinance, "we are not required to insert missing terms into the [Ordinance] or adopt an interpretation precluded by the plain language of the Ordinance." See Foti v. City of Menlo Park, 146 F.3d 629, 639-40 (9th Cir.1998). Thus, we agree with the ACLUN that the term "off-premises canvassing" includes fully protected expression that contains some form of advertising. For example, as written, the Clark County Ordinance may prohibit the distribution of newspapers, pamphlets, magazines, and other publications that contain some form of commercial advertising, even if the noncommercial content is unrelated to the advertising copy. See, e.g., Perry, 121 F.3d at 1368 (holding that "music, buttons, and bumper stickers bearing political, religious, and ideological messages" are "expressive items ... [that] ... do not lose their constitutional protection simply because they are sold rather than given away"); see also, Hays County Guardian v. Supple, 969 F.2d 111, 120 (5th Cir.1992) (holding that university regulation prohibiting on-campus solicitation unconstitutionally restricted the distribution of newspapers containing advertisements). The Clark County Ordinance may also prohibit the distribution of a newspaper that stresses social, political, and environmental issues if the paper's production costs were covered by revenue generated from advertisements, see, e.g., Hays, 969 F.2d at 114 (holding that a newspaper distributed free of charge that dealt with "environmental, peace, and social justice issues" engaged in constitutionally protected speech even though its publication expenses were covered, in part, by revenue derived from advertisers) (internal quotation omitted), or a religious organization's newsletter that contained advertisements for its members' businesses. In short, on the record before us, we find that the ACLUN is likely to succeed on the merits of its claim that Clark County Ordinance Section 16.12 infringes on First Amendment protections accorded a party seeking to distribute noncommercial expressive material containing some form of commercial advertising. See Perry, 121 F.3d. at 1368 (holding that "where the commercial and expressive parts of speech are 'inextricably intertwined,' a court [may] not parcel out the protected and unprotected parts of the speech") (citing Riley, 487 U.S. at 796, 108 S.Ct. 2667). Thus, the ACLUN has demonstrated probable success on the merits of its claim that the Ordinance is overbroad.
 
 
 15
 Given that the First Amendment fully protects the expressive activities regulated by the Clark County Ordinance, we now turn to whether the County has placed legitimate time, place, and manner restrictions on these activities. In a public forum, a government may impose reasonable time, place, and manner restrictions on protected speech. See Ward v. Rock Against Racism, 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989).
 
 2. Public Forum
 
 16
 There is no dispute that the Ordinance regulates activities occurring in a public forum-"a place that has immemorially been held in trust for the use of the public ... for purposes of assembly, communicating thoughts between citizens, and discussing public questions." Perry, 121 F.3d at 1368. The Clark County Ordinance prohibits "off-premises canvassing" along the public streets and sidewalks located within the Las Vegas Resort District. See Frisby v. Schultz, 487 U.S. 474, 480, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988) (holding that public streets and sidewalks are the "archetype of a traditional public forum"). The government's right to limit expressive activity in a public forum "is 'sharply' circumscribed." See Perry Educ. Ass'n. v. Perry Local Educators' Ass'n., 460 U.S. 37, 45, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983). Thus, governmental regulation of speech in a traditional public forum "is subject to the highest scrutiny." International Society for Krishna Consciousness, Inc. v. Lee, 505 U.S. 672, 678, 112 S.Ct. 2701, 120 L.Ed.2d 541 (1992).
 
 3. Time, Place, and Manner Restrictions
 
 17
 Under the time, place, and manner standard, government-imposed restrictions on protected speech are "valid if they (1) are content-neutral; (2) are narrowly tailored to serve a significant governmental interest; and (3) leave open ample alternative channels of communication." One World One Family Now v. City and County of Honolulu, 76 F.3d 1009, 1012 (9th Cir.1996) (citing Rock Against Racism, 491 U.S. at 790, cert. denied, --- U.S. ----, 117 S.Ct. 554, 136 L.Ed.2d 403 (1996)).
 
 
 18
 A speech restriction is content-neutral if it is "justified without reference to the content of the regulated speech." Clark v. Community for Creative Non-Violence, 468 U.S. 288, 293, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984). Here, the Clark County Ordinance refers to the content of speech; it regulates handbills that "propose one or more commercial transactions." The Ordinance targets and restricts the distribution of material containing some commercial information. The Ordinance's ban against "off-premises canvassing" in the Las Vegas Resort District does not prohibit the distribution of handbills that contain no commercial advertising. As a result, an officer who seeks to enforce the Clark County Ordinance would need to examine the contents of the handbill to determine whether its distribution was prohibited. See Foti, 146 F.3d 629, 635-36 (finding that "Menlo Park's exemptions for open house signs and safety, traffic, and public informational signs are content-based because a law enforcement officer must read a sign's message to determine if the sign is exempted from the ordinance"); see also Desert Outdoor Advertising, Inc. v. City of Moreno Valley, 103 F.3d 814, 820 (9th Cir.1996) (concluding that "[b]ecause the exemptions require City officials to examine the content of noncommercial off-site structures and signs to determine whether the exemption applies, the City's regulation of noncommercial speech is content-based"). Clark County's justifications for the regulation provide further evidence that the regulation is content-based:
 
 
 19
 [T]he problems giving rise to the Ordinance have not been observed with respect to those distributing noncommercial materials, only purveyors of commercial materials. As a result, noncommercial canvassing simply does not pose the same threat to Clark County's legitimate safety interests as commercial canvassing on the resort district's sidewalks. There is no evidence pedestrians are intimidated, harassed or forced off the sidewalk by noncommercial canvassers, as the evidence establishes occurs with commercial canvassers.
 
 
 20
 This statement indicates that Clark County adopted the Ordinance because it disapproved of canvassers handing out commercial handbills to pedestrians within the Las Vegas Resort District. Cf. Perry, 121 F.3d at 1369 (holding that ordinance banning sales of music, buttons, and bumper stickers was content-neutral but not narrowly tailored to serve governmental interests of protecting local merchants and aiding free traffic flow, in violation of the First Amendment). By distinguishing between commercial and noncommercial forms of expression, the Clark County Ordinance is content-based. See, e.g., Heffron v. International Society for Krishna Consciousness, Inc., 452 U.S. 640, 648-49, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981) (finding that regulation was content-neutral because it extended to persons or organizations whether commercial or charitable).
 
 
 21
 Content-based regulations are presumptively unconstitutional. See R.A.V. v. City of St. Paul, 505 U.S. 377, 382, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992). Content-based regulations pass constitutional muster only if they are the least restrictive means to further a compelling interest. See Sable Communs. of Cal. v. F.C.C., 492 U.S. 115, 126, 109 S.Ct. 2829, 106 L.Ed.2d 93 (1989). Clark County's asserted interests and goals in enacting Ordinance Section 16.12 are: (1) to improve the pedestrian environment; (2) to maintain accessible sidewalks; (3) to prevent harassment of pedestrians; and (4) to reduce litter. See C.C.C. § 16.12.010.[10]
 
 
 22
 Cities and counties "have a substantial interest in protecting the aesthetic appearance of their communities by avoiding visual clutter ... [and] in assuring safe and convenient circulation on their streets." One World One Family Now, 76 F.3d at 1013 (internal quotation and citation omitted). The County also may have a substantial interest in preventing solicitors from harassing pedestrians on public streets and sidewalks. See Edenfield v. Fane, 507 U.S. 761, 774, 113 S.Ct. 1792, 123 L.Ed.2d 543 (1993) (noting that while courts have recognized the "generic hazards of personal solicitation," a rule banning solicitation is justified in situations "inherently conducive to overreaching and other forms of misconduct") (internal quotation omitted). These substantial interests, however, may not be compelling. See Metromedia, Inc. v. City of San Diego, 453 U.S. 490, 521, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981) (plurality opinion); National Advertising Co. v. City of Orange, 861 F.2d 246, 249 (9th Cir.1988); Schneider v. State of New Jersey, Town of Irvington, 308 U.S. 147, 162, 60 S.Ct. 146, 84 L.Ed. 155 (1939) (stating that the "purpose to keep the streets clean and of good appearance is insufficient to justify an ordinance which prohibits a person rightfully on a public street from handing literature to one willing to receive it"). Because Clark County assumed throughout these proceedings that Ordinance Section 16.12 is content-neutral, it has not offered any reason why its interests in aesthetics and traffic safety are compelling. Given that the Ordinance is content-based, at this early stage in the litigation Clark County has not met its burden of showing that the Ordinance is the least restrictive means to further a compelling interest. As such, we find that on the record before us the ACLUN is likely to succeed on the merits of its overbreadth claim.
 
 
 23
 A content-based regulation that restricts expressive activity in a public forum may be unconstitutional if less restrictive alternatives are available. See Schaumburg, 444 U.S. at 637, 100 S.Ct. 826. In contrast, a content-neutral regulation does not have to employ the least restrictive means. See Rock Against Racism, 491 U.S. at 798, 109 S.Ct. 2746. The Clark County Ordinance is not narrowly tailored to satisfy either the content-based or content-neutral standard.
 
 
 24
 First, a substantial amount of speech unrelated to Clark County's asserted interests is regulated, i.e., noncommercial speech intertwined with commercial speech. As discussed above, no evidence exists in the present record (which involves an appeal from a denial of preliminary injunctive relief) to support an assumption that "commercial" handbillers are the inherent cause of Clark County's pedestrian flow problems. Ordinance Section 16.12 may further Clark County's objective of reducing the number of canvassers positioned along the Las Vegas Resort District. But the Ordinance is not narrowly tailored to serve the County's asserted interests because the record now before us indicates that all canvassers, whether distributing commercial or non-commercial handbills, contribute to the problems of sidewalk congestion, harassment of pedestrians, and littering. See, e.g., Carey v. Brown, 447 U.S. 455, 465, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980) (invalidating an ordinance that prohibited picketing in residential areas, except picketing regarding labor issues, because there was "nothing inherent in the nature of peaceful labor picketing that would make it any less disruptive of residential privacy than peaceful picketing on issues of broader social concern"); see also City of Cincinnati v. Discovery Network, Inc., 507 U.S. 410, 418, 113 S.Ct. 1505, 123 L.Ed.2d 99 (1993) (invalidating an ordinance that permitted newsracks on public streets for newspapers, but not newsracks for commercial handbills). Here, any type of handbill-purely commercial or noncommercial intertwined with commercial-distributed along the Las Vegas Resort District contributes to the aesthetic concerns of the County. Moreover, any type of canvasser stationed on the sidewalks along the Las Vegas Resort District could affect pedestrian safety and the likelihood that pedestrians will be approached with unwanted solicitations. Because several forms of handbills (e.g., noncommercial, informational, political/social) contribute equally to these problems, the Clark County Ordinance is not narrowly tailored to meet the County's substantial interests. See Perry, 121 F.3d at 1370.
 
 
 25
 Second, on the record now before us we also find that the geographic scope of Ordinance Section 16.12 is not narrowly tailored to serve Clark County's stated interests. Ordinance Section 16.12 does not identify specific problem locations. Instead, it categorically bans "off-premises canvassing" along the entire Las Vegas Resort District regardless of whether the traffic, safety, and litter problems identified by Clark County exist at a given location.
 
 
 26
 Third, there is no evidence in the record that only commercial canvassers harass pedestrians. Affidavits were submitted to the district court indicating that "handbillers occasionally turn violent, and that fights have broken out on the sidewalks among handbillers." The district court, however, did not indicate whether such violent outbreaks typified "commercial" handbillers or were simply by-products of persons attempting to canvass a mobile group of pedestrians along narrow passageways.[11] Clark County contends that profit-driven in-person commercial canvassing renders this type of activity "inherently more dangerous to pedestrian safety than noncommercial canvassing." Clark County, however, offers no evidence supporting such an assertion. Moreover, one would expect that similar confrontations would occur more frequently when the canvasser was advocating a deep felt, but unpopular, personal, political, or religious belief.
 
 
 27
 The existence of less-burdensome alternatives to the restriction on speech further indicates that the "fit" between Clark County's stated ends and the means to achieve those ends set forth in the Ordinance is unreasonable. See Discovery Network, 507 U.S. at 417, 113 S.Ct. 1505. Here, there is no evidence that an outright ban on commercial canvassing is necessary to meet the asserted interests of the County. The district court concluded that the problems attendant to the canvassing resulted from "a dozen handbillers" congregating at one time at a single point on the sidewalk. A regulation limiting the number of canvassers on a given street corner or block at any given time could address the County's concerns by reducing congestion and diffusing tension among canvassers. Alternatively, the County could issue canvassing permits. A permit system could help regulate congestion and build in accountability should problems arise. Other alternatives to reduce congestion include removing permanent obstacles from the sidewalk (such as benches and temporary signs); designating spots for pedestrians to call for taxicabs or wait for public buses; and requiring resorts with outdoor entertainment displays to ensure that event viewers do not block the flow of traffic. The County could also designate specific sidewalk locations within the Las Vegas Resort District where canvassing would be allowed.
 
 
 28
 Even assuming that the Ordinance's restrictions on speech are content-neutral, at this stage in the litigation Clark County has not demonstrated that the Ordinance is narrowly tailored to further its asserted interests. See Rock Against Racism, 491 U.S. at 800, 109 S.Ct. 2746 (holding that the means chosen to enforce a content-neutral regulation must not be "substantially broader than necessary to achieve the government's interest"). There is ample support in the record demonstrating that Clark County did not meet its burden of showing that a "reasonable fit" existed between its legitimate interests in pedestrian safety and sidewalk aesthetics and its choice of banning from the Las Vegas Resort District all canvassing that contains some form of advertising. See, e.g., Discovery Network, 507 U.S. at 416, 417, 113 S.Ct. 1505 (holding that under commercial speech test, the regulation prohibiting the distribution of any commercial handbill on commercial property, via newsracks, did not reasonably further the city's legitimate interests in safety and aesthetics). The Clark County Ordinance, as written, is not sufficiently tailored to the governmental interests that the County purports to advance.[12] In short, we find that the ACLUN is likely to succeed on the merits of this claim because the Ordinance appears to impose unreasonable time, place, and manner restrictions on fully protected speech inextricably intertwined with commercial speech.
 
 D. Probable Success on the Merits
 
 29
 The ACLUN has demonstrated probable success on the merits of its claim that the Clark County Ordinance is overbroad and that it imposes unreasonable time, place, and manner restrictions on protected speech. The ACLUN has also demonstrated the possibility of irreparable harm. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); see also Jacobsen v. United States Postal Serv., 812 F.2d 1151, 1154 (9th Cir.1987). Therefore, the district court erred in denying the motions for preliminary injunction.
 
 E. Attorney's Fees
 
 30
 The ACLUN is to recover costs. The question of attorney's fees is reserved until the conclusion of the case on the merits.
 
 CONCLUSION
 
 31
 For the foregoing reasons, we conclude that the ACLUN is likely to succeed on its claim that Clark County Ordinance Section 16.12 is overbroad because it restricts not only purely commercial speech, but also fully protected speech inextricably intertwined with commercial speech. The ACLUN has also shown probability of success on the merits that the Ordinance, as written, is a content-based regulation. On the record before us, Clark County has not met its burden of showing that the Ordinance is the least restrictive means to further a compelling interest. Moreover, even assuming that the Ordinance's restrictions are content-neutral, the evidence now before us indicates that the Ordinance is not narrowly tailored to advance the County's asserted interests. At this early stage in the litigation, the record also indicates that the time, place, and manner restrictions imposed by the Ordinance on fully protected speech inextricably intertwined with commercial speech are unreasonable. In sum, the ACLUN has demonstrated probable success on the merits of its claim that Clark County Ordinance Section 16.12 is constitutionally deficient on its face.[13] The ACLUN has also demonstrated the possibility of irreparable harm.
 
 
 32
 Accordingly, we remand to the district court with instructions that it issue a preliminary injunction against the enforcement of Clark County Ordinance 16.12, as now written. On remand, Clark County may defend the Ordinance by proffering evidence that it can not achieve its legitimate interests through other less restrictive means or may abandon the Ordinance in favor of other narrowly-tailored ordinances that further its interests.
 
 
 33
 REVERSED AND REMANDED.
 
 
 
 *
 The Honorable Irma E. Gonzalez, United States District Judge for the Southern District of California, sitting by designation
 
 
 [1]
 Richard Soranno is the owner of S.O.C. Inc
 
 
 [2]
 The erotic dance entertainment services at issue in this case are usually provided in hotel/motel rooms and are available throughout Clark County for a fee. A partially dressed or nude dancer is usually requested by telephone and paid for either by the person who views the performance or a third party. While the County asserts that these companies operate as a "front" for illegal prostitution, the parties have stipulated for the purposes of the preliminary injunction that such entertainment services are not illegal
 
 
 [3]
 "Off-premises canvassing" is defined in C.C.C. § 16.12.020(5) as:
 (a) distributing, handing out, or offering on public sidewalks, handbills, leaflets, brochures, pamphlets or other printed or written literature, materials, or information, which advertise or promote services or goods for sale lease or rent or which otherwise propose one or more commercial transactions and which specifically refer to products or services for sale, lease or rent and which are distributed with an economic motivation or commercial gain; or (b) soliciting on public sidewalks, pedestrians to purchase, lease, or rent services or goods or otherwise propose one or more commercial transactions.
 
 
 [4]
 Hillsboro's and ACLUN's motion for reconsideration from the district court's order denying the preliminary injunction was timely under Federal Rule of Civil Procedure 59(e). Hillsboro's and ACLUN's motion for reconsideration was filed on March 17, 1997-nine working days from the date the district court entered the March 4, 1997 order denying the preliminary injunction. See Fed.R.Civ.P. 6(a) (providing that where the filing period amounts to less than eleven days "intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation"). By filing a timely Rule 59(e) motion for reconsideration, the time to appeal began running on May 9, 1997, the date the district court denied the motion for reconsideration. See Fed. R.App. P. 4(a)(4)(C). Thus, Hillsboro's and ACLUN's May 14, 1997 notice appealing the denial of their motion for reconsideration and the denial of their motion for a preliminary injunction was timely. See Sierra On-Line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1421 (9th Cir.1984) (holding that the plaintiff had preserved his right to appeal the underlying preliminary injunction by filing a timely Rule 59(e) motion for reconsideration)
 
 
 [5]
 The district court reviewed the constitutionality of the Clark County Ordinance under the test set forth in Central Hudson, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341. In Central Hudson, the Supreme Court held that in order to be valid, a restriction on commercial speech must (1) serve a substantial governmental interest; (2) directly and materially advance the interest; and (3) reach no further than necessary to accomplish this objective. Id. at 566, 100 S.Ct. 2343. Appellants contend that even if the Ordinance regulates purely commercial speech, the district court erred in applying the Central Hudson test. Appellants contend that the Ordinance's restrictions on commercial speech should be reviewed under the more stringent strict scrutiny test applied in 44 Liquormart, Inc. v. Rhode Island, 517 U.S. 484, 496-97, 116 S.Ct. 1495, 134 L.Ed.2d 711 (1996). Because we conclude that the Ordinance is overbroad, we do not resolve this dispute
 
 
 [6]
 Clark County and the Casino intervenors contend that Clark County Ordinance Section 16.12 may not be challenged under the overbreadth doctrine because the "Supreme Court has not permitted overbreadth challenges with respect to commercial speech." While the Supreme Court frowns upon facial overbreadth challenges to ordinances that regulate purely commercial speech, see Bates v. State Bar of Arizona, 433 U.S. 350, 380-81, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977) (declining to apply overbreadth challenge to ordinance regulating professional advertising for percuniary gain); Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 497, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982) (finding that where an ordinance is expressly directed at commercial activity the overbreadth doctrine does not apply), at issue in this appeal is whether the Clark County Ordinance reaches beyond purely commercial speech to regulate fully protected speech that is "inextricably intertwined" with commercial speech. Thus, an overbreadth challenge to the Clark County Ordinance is appropriate. See Schaumburg, 444 U.S. at 634, 100 S.Ct. 826 (holding that the limitation that the overbreadth challenges cannot be brought against certain commercial speech cases was inapplicable where the issue on appeal was whether the manner in which a city ordinance regulated solicitations also unduly intruded upon the rights of fully protected speech)
 
 
 [7]
 For the first time on appeal, S.O.C., Soranno, and Hillsboro contend that the Clark County Ordinance is unconstitutionally overbroad. Before the district court, S.O.C., Soranno, and Hillsboro challenged the validity of the Clark County Ordinance on the basis that it improperly regulated purely commercial speech. Generally, we decline to entertain issues raised for the first time on appeal. See Broad v. Sealaska Corp., 85 F.3d 422, 430 (9th Cir.1996), cert. denied, --- U.S. ----, 117 S.Ct. 768, 136 L.Ed.2d 714 (1997). The overbreadth argument, nonetheless, is properly presented on appeal because the ACLUN briefed the issue when it intervened and joined S.O.C., Soranno, and Hillsboro in asking the district court to enjoin enforcement of the Clark County Ordinance. Accordingly, we address the contention that the Clark County Ordinance is overbroad
 
 
 [8]
 In Bolger, the Court held that the presence of three characteristics, in combination, provided "strong support" that the appellees' mailings for contraceptive products were properly classified as commercial speech by the district court. See id. The three characteristics were: (1) use of an advertising format, (2) reference to a particular product, and (3) existence of an economic motive for distributing the material. See id
 
 
 [9]
 Section 16.12.050(5)(a) refers to materials that: (1) "advertise or promote commercial transactions," (2) "specifically or generically refer to products or services for sale, lease, or rent," and (3) are "distributed with an economic motivation of commercial gain." C.C.C. § 16.12.050(5)(a)
 
 
 [10]
 C.C.C. § 16.12.010 states:
 Since traditionally, the major emphasis along the Strip has been on automobile traffic and not on pedestrians, the existing pedestrian environment is inadequate as a transportation system and lacking in many safety features. Moreover, a great number of persons are engaged in the use of public sidewalks to conduct off-premises canvassing which creates undue obstruction, hindrance, blockage, hampering and interference with pedestrian travel and littering of the public sidewalks. The activities of these persons frequently involve harassment of pedestrians. Large numbers of pedestrians are walking in the streets to avoid harassment and intimidation on congested public sidewalks and many pedestrians are crossing against the traffic signal indications.
 In recognition of the need to improve the pedestrian environment, the need to maintain accessible sidewalks, the need to prevent harassment of pedestrians, and the need to reduce litter, it is necessary to enact the ordinance codified in this section.
 
 
 [11]
 Section 16.12.020 acknowledges that Las Vegas' infrastructure was built around facilitating the flow of vehicular-traffic. As a result, "the existing pedestrian environment is inadequate as a transportation feature and [is] lacking in many safety features." C.C.C. § 16.12.010
 
 
 [12]
 Clark County and the Casino Intervenors place great weight on the Eleventh Circuit's decision in Sciarrino v. City of Key West, 83 F.3d 364, 366 (11th Cir.1996), cert. denied, --- U.S. ----, 117 S.Ct. 768, 136 L.Ed.2d 714 (1997) (upholding city ordinance "limiting" location of off-premises solicitation as valid under the First Amendment). Key West is not controlling. Moreover, the Eleventh Circuit determined that the regulation at issue in Key West regulated purely commercial speech. Id. In contrast, Clark County Ordinance Section 16.12 prohibits commercial and fully protected speech. Lastly, the restrictions imposed by Clark County Ordinance Section 16.12 on both commercial and noncommercial speech are more extensive than those at issue in Key West. Here, unlike the Key West ordinance, the Clark County Ordinance completely bans off-premises canvassing in the tourist sections of the city. As a result, the Clark County Ordinance lacks several of the narrowly-tailored features included in the Key West Ordinance. For example, the Clark County Ordinance fails to: (1) limit the prohibition against canvassing to specific problem areas (instead it imposes a large geographic ban); (2) limit the number of off-premises canvassers "per-business"; and (3) set up a permitting system to regulate off-premises canvassing
 
 
 [13]
 Accordingly, we do not reach the numerous other contentions raised by the parties