**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

AMERICAN CIVIL LIBERTIES
UNION OF NEVADA; PAUL R.
BROWN; GARY PECK; UNITARIAN
UNIVERSALIST SOCIAL JUSTICE
COMMITTEE,
　　　　　　*Plaintiffs-Appellants,*

　　　　　v.

CITY OF LAS VEGAS; OSCAR
GOODMAN, in his official capacity
as Mayor; FREMONT STREET
LIMITED LIABILITY CORP.; JOSEPH
SCHILLACI, in his official capacity
as President of The Fremont Street
Limited Liability Corp.,
　　　　　　*Defendants-Appellees.*

No. 05-15667

D.C. No.
CV-97-01419-DWH

AMERICAN CIVIL LIBERTIES
UNION OF NEVADA; PAUL R.
BROWN; GARY PECK; UNITARIAN
UNIVERSALIST SOCIAL JUSTICE
COMMITTEE,
　　　　　　*Plaintiffs-Appellees,*

　　　　　v.

CITY OF LAS VEGAS; OSCAR
GOODMAN; FREMONT STREET
LIMITED LIABILITY CORP.; JOSEPH
SCHILLACI,
　　　　　　*Defendants-Appellants.*

No. 05-15767

D.C. No.
CV-97-01419-DWH

OPINION

17671

Appeals from the United States District Court
for the District of Nevada
David Warner Hagen, District Judge, Presiding

Argued and Submitted
June 1, 2006—San Francisco, California

Filed October 20, 2006

Before: A. Wallace Tashima, Sidney R. Thomas, and
Richard A. Paez, Circuit Judges.

Opinion by Judge Paez

---

**COUNSEL**

Allen Lichtenstein, Las Vegas, Nevada, and Mark J. Lopez, American Civil Liberties Union Foundation, Inc., New York, New York, for the plaintiffs-appellants/cross-appellees.

Todd L. Bice, Shreck Brignone, Las Vegas, Nevada, Kristin B. McMillan and Patrick J. Reilly, Hale Lane Peek Dennison Howard & Anderson, Las Vegas, Nevada, and William P. Henry, Office of the City Attorney, Las Vegas, Nevada, for the defendants-appellees/cross-appellants.

---

**OPINION**

PAEZ, Circuit Judge:

We must decide whether city ordinances prohibiting solicitation and the erection of tables in a five-block tract of downtown Las Vegas unconstitutionally restrict free speech. We hold that they do.

**I.**

This case returns to our court for a third time. In 1997, non-profit organizations the American Civil Liberties Union of Nevada, the Unitarian Universalist Social Justice Committee, the Shundahai Network, and three of their members (collectively "Plaintiffs") filed a complaint in federal district court for declaratory and injunctive relief.[1] Relying on 42 U.S.C.

---

[1]The Shundahai Network and Greg Gable, a Shundahai Network member, have since dismissed their claims.

§ 1983, Plaintiffs sought to enjoin the City of Las Vegas, the mayor of Las Vegas, the Fremont Street Experience Limited Liability Corporation ("FSELLC"),[2] and the chief executive of FSELLC (collectively "Defendants" or "the City") from enforcing several provisions of the Las Vegas Municipal Code ("LVMC") that Plaintiffs believe unconstitutionally restrict their First and Fourteenth Amendment rights to free speech and equal protection of the laws.

As we explained in *ACLU v. City of Las Vegas*, 333 F.3d 1092 (9th Cir. 2003) ("*ACLU I*"), *cert. denied*, 540 U.S. 1110 (2004), the ordinances that are the focus of Plaintiffs' complaint were adopted as part of the City's effort to revitalize the downtown area of Las Vegas:

> In the early 1990s, downtown Las Vegas was suffering from an economic downturn. The area was seen as sleazy and unsafe, and downtown casinos were unable to compete with the glitzy Las Vegas Strip. Moreover, key economic factors showed that the area was in decline. In an effort to halt the slump and return downtown to its former luster, city officials decided to emulate economic revival measures taken in towns throughout the United States by creating a pedestrian-friendly zone. Five blocks of Fremont Street, the center of the downtown area, were closed off to automotive traffic. The City of Las Vegas contracted with a private entity, the Fremont Street Experience Limited Liability Corporation ("FSELLC"), to transform frumpy Fremont Street into the glamorous Fremont Street Experience. At a cost to the public and contributing Fremont Street businesses of $70 million, the street and sidewalk were torn up, various underground infrastructure ele-

---

[2]FSELLC is a private company charged with operating the Fremont Street Experience in downtown Las Vegas. The Fremont Street Experience is described in detail below.

ments were installed, the street was decoratively repaved as one large promenade, and a canopy capable of generating a lightshow (known, with a dash of hyperbole, as the "celestial superstructure") was placed high overhead certain parts of the street.

The street continues to play its old role as a pedestrian thoroughfare, and at two points it is crossed by streets bearing car traffic. It also functions as a "commercial and entertainment complex," intended to be an "attraction to compete with numerous other entertainment venues in Las Vegas." In addition to the many casinos and stores that line the street, the Fremont Street Experience hosts daily performing acts and bands, and frequently holds large special events, most of which are free and open to the public. In the evening, the lightshow plays overhead for a few minutes each hour.

*Id.* at 1094-95. Certain speech-related activities, in the eyes of Defendants, are not compatible with the new Fremont Street Experience. *See id.* at 1095. As the district court explained in its most recent order:

According to testimony of numerous witnesses, written surveys, letters, and other documentation presented to the City Council, solicitation activities in the Mall [i.e., the Fremont Street Experience] would disrupt the comfortable environment that is sought to be maintained for its patrons. That disruption would in turn cause visitors, tenants, and corporate sponsors of the Mall to go elsewhere or deter them from coming to the Mall in the first instance. Without visitors, the City's purpose in creating the Mall to revitalize the downtown business area would be compromised and the Mall itself would be in jeopardy economically.

*ACLU v. City of Las Vegas*, No. 97-1419, at 6-7 (D. Nev. Mar. 4, 2005) (unpublished order) ("2005 Order"). The record is replete with evidence that aggressive panhandling, solicitation, and handbilling had discouraged tourists and consumers from patronizing the downtown commercial district.

To address these concerns, the City adopted ordinances restricting activities in the Fremont Street Experience. One of those ordinances, LVMC § 10.44.030, prohibits solicitation at multiple Las Vegas locations including the Fremont Street Experience. *See id.* § 10.44.030(F). Soliciting in the Fremont Street Experience constitutes a misdemeanor. *Id.* § 10.44.030.

Solicitation is broadly defined as "to ask, beg, solicit or plead, whether orally, or in a written or printed manner, for the purpose of obtaining money, charity, business or patronage, or gifts or items of value for oneself or another person or organization." *Id.* § 10.44.010(A). The expansive reach of the solicitation ordinance is confirmed by Defendants' interpretation of it as prohibiting distribution of a handbill by the Shundahai Network stating "WE NEED HELP - ANYTHING - FOOD - DONATIONS - PEOPLE - CARS - LOVE - KITCHEN SUPPLIES" and providing contact information. According to the City's counsel, distribution of this handbill violated the ordinance because "[t]he solicitation ordinance expressly prohibits any requests whether written or oral for charity, business or patronage." The district court confirmed this interpretation of the ordinance in its 2001 order, finding that LVMC § 10.44.010(A) "bar[s] the distribution of message bearing leaflets that solicit money or donations . . . through in hand leafleting, regardless of whether their request is for an immediate or future donation." *ACLU v. City of Las Vegas*, No. 97-1419, at 14-15 (D. Nev. Apr. 4, 2001) (unpublished order) ("2001 Order").

In their 1997 complaint, Plaintiffs challenged the solicitation ordinance as invalid both on its face and as applied to them. According to Plaintiffs, the ordinance unconstitution-

ally restricts their and others' First and Fourteenth Amendment rights to free speech.[3] Plaintiffs also asserted that, to the extent FSELLC permits solicitation in the Fremont Street Experience, the ordinance violates their and others' Fourteenth Amendment equal protection rights because no standards govern FSELLC's discretion.

A second ordinance prohibits a variety of activities solely in the Fremont Street Experience. *See* LVMC § 11.68.100. Violation of this ordinance also constitutes a misdemeanor. *Id.* § 11.68.130. In their 1997 complaint, Plaintiffs challenged three subsections of LVMC § 11.68.100[4] —those banning

---

[3]The First Amendment states that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. "Under the Fourteenth Amendment, city ordinances are within the scope of this limitation on governmental authority." *Members of the City Council v. Taxpayers for Vincent*, 466 U.S. 789, 792 n.2 (1984).

[4]In relevant part, the ordinance reads:

Prohibited. The following are prohibited within the Pedestrian Mall:

. . . .

(B)   Mall vending, mall advertising, mall entertainment special events or other commercial activities unless conducted or authorized by The Fremont Street Experience Limited Liability Company;

. . . .

(H)   The placement of any table, rack, chair, box, cloth, stand, booth, container, structure or other object within the Pedestrian Mall except as necessary for emergency purposes, or the maintenance or repair of the Pedestrian Mall, or as authorized by The Fremont Street Experience Limited Liability Company for special events, mall advertising, mall entertainment or mall vending or other commercial and entertainment activities;

(I)   In-person distribution to passersby in a continuous or repetitive manner of any physical or tangible things and printed, written or graphic materials[.]

LVMC § 11.68.100.

vending, tabling, and leafleting—on equal protection grounds. *See id.* §§ 11.68.100(B), (H), (I).[5] In addition to its language banning specific conduct in the Fremont Street Experience, LVMC § 11.68.100 also contains an exemption for labor-related activities, which applies to each of its eleven subsections including the vending, tabling, and leafleting provisions.[6] In their complaint, Plaintiffs claimed the labor exception's application to LVMC §§ 11.68.100(B), (H), and (I) violates the Equal Protection Clause of the Fourteenth Amendment.[7]

Of relevance to Plaintiffs' claim regarding LVMC § 11.68.100(H) are the facts of the following incident, which occurred on October 24, 2000. Three ACLU members set up a table in the Fremont Street Experience, from which they hung an ACLU banner. They placed petitions on the table and handed out flyers. After security officers confronted the members and showed them the ordinance prohibiting tabling, they were required to remove the table.

Initially, the district court ruled that the Fremont Street Experience is a nonpublic forum and analyzed Plaintiffs' challenges in light of that determination. *ACLU v. City of Las Vegas*, 13 F. Supp. 2d 1064, 1073-83 (D. Nev. 1998). The district court granted summary judgment to Defendants regarding the solicitation and tabling ordinances, but issued preliminary injunctions enjoining Defendants from enforcing

---

[5]Although the 1997 complaint did not specify that Plaintiffs were challenging subsections (B) and (H) of LVMC § 11.68.100, the district court construed it as a challenge to those subsections, and Plaintiffs since have filed an amended complaint alleging constitutional infirmities in subsections (B) and (H).

[6]LVMC § 11.68.100 states: "Any conduct 'arguably protected' by the National Labor Relations Act is not included in [section 11.68.100's] prohibitions until or unless such conduct is determined to be unprotected pursuant to a decision of the National Labor Relations Board."

[7]The Fourteenth Amendment states: "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV.

the leafleting and vending ordinances. *Id.* at 1084-85. We dismissed cross-appeals from the district court's order in an unpublished disposition. *ACLU v. City of Las Vegas*, 168 F.3d 497 (9th Cir. 1999) (mem.).

In 2001, the district court entered a final, unpublished order granting summary judgment to Defendants on the solicitation and tabling claims and granting summary judgment to Plaintiffs on their leafleting and vending claims. The court permanently enjoined Defendants from enforcing the latter two ordinances. 2001 Order at 18. The court reiterated its conclusion that the Fremont Street Experience is a nonpublic forum. *Id.* at 10.

Once again the parties cross-appealed. In a published opinion, we held that the district court erred in concluding that the Fremont Street Experience is a nonpublic forum. "[T]he Fremont Street Experience unmistakably possesses the characteristics of a traditional public forum" where restrictions on protected First Amendment activity "must be scrutinized under a strict standard of review." *ACLU I*, 333 F.3d at 1094. Although the City urged us to hold that its "expensive makeover" transformed the Fremont Street Experience into a nonpublic forum, we rejected the City's attempt to recharacterize its downtown streets and sidewalks as anything other than a traditional public forum. *Id.* at 1102; *see also id.* at 1105 ("The principal uses of Fremont Street, both before and after its transformation, are as a commercial district and public thoroughfare. The grime of Fremont Street has been scrubbed away and it has been dramatically redesigned, but its character as a central commercial street remains."). Because the district court correctly concluded that the leafleting and vending ordinances were invalid even under the laxer standard applicable to a nonpublic forum, we affirmed the court's holdings that those ordinances were unconstitutional. *Id.* at 1106-09. We remanded to the district court for reconsideration of the solicitation and tabling ordinances in light of our

holding that the Fremont Street Experience is a traditional public forum. *Id.* at 1108-09.

On remand, Plaintiffs amended their complaint to clarify their claims.[8] In their amended complaint, Plaintiffs challenged the solicitation ordinance as an unconstitutional restriction on protected First Amendment activity, both on its face and as applied to them. Plaintiffs challenged both the solicitation and tabling ordinances as unconstitutional infringements of their Fourteenth Amendment equal protection rights, again facially and as applied to them.[9]

On cross-motions for summary judgment, the district court reanalyzed the solicitation and tabling ordinances in light of our conclusion that the Fremont Street Experience is a traditional public forum. In an unpublished order, the district court held that the solicitation ban is content-neutral and a valid time, place, and manner restriction on First Amendment activity. 2005 Order at 5-8. The court granted Defendants' motion for summary judgment on the solicitation ordinance. *Id.* at 8. The court further held that the ordinance prohibiting the erection of tables in the Fremont Street Experience violates Plaintiffs' equal protection rights. *Id.* at 9-10. The court granted summary judgment to Plaintiffs on their as-applied claim, but

---

[8]Plaintiffs also sought to amend their complaint to include a challenge to LVMC § 11.68.100(C), which prohibits parades in the Fremont Street Experience. The district court did not allow this amendment.

[9]Plaintiffs also argued that the solicitation ordinance is overly broad. "Technically, the overbreadth doctrine does not apply if the parties challenging the statute engage in the allegedly protected expression." *Nunez v. City of San Diego*, 114 F.3d 935, 949 (9th Cir. 1997). Such is the case with Plaintiffs. However, Plaintiffs may seek, as a remedy, the facial invalidation of the solicitation ordinance if it is an overly broad regulation that "create[s] an unacceptable risk of the suppression of ideas." *Id.* (internal quotation marks omitted). "Facial challenges to overly broad statutes are allowed not primarily for the benefit of the litigant, but for the benefit of society—to prevent the statute from chilling the First Amendment rights of other parties not before the court." *Sec'y of State v. Joseph H. Munson Co.*, 467 U.S. 947, 958 (1984).

declined to hold that the tabling statute is facially invalid. *Id.* at 10. The parties timely cross-appealed.

We have jurisdiction under 28 U.S.C. § 1291, and we affirm in part, reverse in part, and remand to the district court with instructions to enter judgment enjoining Defendants from enforcing the solicitation ordinance in the Fremont Street Experience and enjoining Defendants from enforcing the tabling ordinance against Plaintiffs when Plaintiffs seek to erect tables to facilitate the dissemination of protected speech.

## II.

We review de novo the district court's grants of summary judgment and may affirm on any ground that is supported by the record. *ACLU I*, 333 F.3d at 1096-97. The question is whether, when the evidence is viewed in the light most favorable to the nonmoving party, genuine issues of material fact exist. *Id.* at 1097. Here, cross-motions for summary judgment are at issue. We "evaluate each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences." *Id*.

## III.

"The government's right to limit expressive activity in a public forum 'is "sharply" circumscribed.' " *S.O.C., Inc. v. County of Clark*, 152 F.3d 1136, 1145 (9th Cir.) (quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983)), *amended by* 160 F.3d 541 (9th Cir. 1998). "Thus, governmental regulation of speech in a traditional public forum 'is subject to the highest scrutiny.' " *Id.* (quoting *Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 678 (1992) ("*ISKCON*")). The government bears "an extraordinarily heavy burden" when it seeks to regulate free speech in a traditional public forum. *ACLU I*, 333 F.3d at 1098 (internal quotation marks omitted).

We reiterate our concern, expressed in our prior published opinion on Las Vegas's restrictions on free speech in the Fremont Street Experience, that "as society becomes more insular in character, it becomes essential to protect public places where traditional modes of speech and forms of expression can take place. 'We think this is particularly true with respect to downtown public spaces conducive to expressive activities.' " *Id.* at 1097 (quoting *First Unitarian Church v. Salt Lake City Corp.*, 308 F.3d 1114, 1131 (10th Cir. 2002)) (alteration, citation, and internal quotation marks omitted).

Las Vegas is not alone in its effort to reinvent an historically public space and its subsequent attempt to limit free speech where First Amendment activities formerly proceeded unhindered. There is a growing " 'nationwide trend toward the privatization of public property.' " *Id.* (quoting *Chicago Acorn v. Metro. Pier & Exposition Auth.*, 150 F.3d 695, 704 (7th Cir. 1998)). In recent years, cities such as Salt Lake City, Utah, *see First Unitarian Church*, 308 F.3d 1114, Boston, Massachusetts, *see Citizens to End Animal Suffering & Exploitation, Inc. v. Faneuil Hall Marketplace, Inc.*, 745 F. Supp. 65 (D. Mass. 1990), Portland, Oregon, *see Lloyd Corp. v. Whiffen*, 849 P.2d 446 (Or. 1993), and Jamestown, North Dakota, *see City of Jamestown v. Beneda*, 477 N.W.2d 830 (N.D. 1991), to name just a handful, have sold or leased traditional public fora to private entities. *See also Marsh v. Alabama*, 326 U.S. 501 (1946) (prohibiting the private owner of a company town from eliminating First Amendment activities from its streets and sidewalks); *Venetian Casino Resort, LLC v. Local Joint Exec. Bd.*, 257 F.3d 937 (9th Cir. 2001) (considering restrictions on expressive activity on a formerly public sidewalk, now privately owned, adjacent to Las Vegas Boulevard). If this trend of privatization continues—and we have no reason to doubt that it will—citizens will find it increasingly difficult to exercise their First Amendment rights to free speech, as the fora where expressive activities are protected dwindle. "Awareness of contemporary threats to speech

must inform our jurisprudence regarding public forums." *ACLU I*, 333 F.3d at 1097.

It is with these principles in mind that we turn to the merits of this case.

## A.

Plaintiffs contend that the City's solicitation ordinance unconstitutionally restricts their First and Fourteenth Amendment rights to free speech in the Fremont Street Experience. The district court disagreed. We review de novo the district court's ruling because First Amendment questions are mixed questions of law and fact, *Gerritsen v. City of Los Angeles*, 994 F.2d 570, 575 (9th Cir. 1993), and because we review de novo the constitutionality of local ordinances, *G.K. Ltd. Travel v. City of Lake Oswego*, 436 F.3d 1064, 1070 (9th Cir. 2006). We reverse and remand to the district court with instructions to enjoin Defendants from enforcing LVMC § 10.44.030 in the Fremont Street Experience.

## 1.

**[1]** It is beyond dispute that solicitation is a form of expression entitled to the same constitutional protections as traditional speech. *See Vill. of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 628-32 (1980); *see also ISKCON*, 505 U.S. at 677; *Gaudiya Vaishnava Soc'y v. City of San Francisco*, 952 F.2d 1059, 1063-64 (9th Cir. 1991). "Regulation of a solicitation must be undertaken with due regard for the reality that solicitation is characteristically intertwined with informative and perhaps persuasive speech . . . , and for the reality that without solicitation the flow of such information and advocacy would likely cease." *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 796 (1988) (internal quotation marks omitted) (alteration in original). The City bears the burden of justifying its restriction. *Bay Area Peace Navy v. United States*, 914 F.2d 1224, 1227 (9th Cir. 1990).

**[2]** Although regulation of speech in a traditional public forum is disfavored, it is not impermissible. The government may place reasonable time, place, and manner restrictions on speech. However, these restrictions must be justified without reference to the protected speech's content. They must be content-neutral and narrowly tailored to serve a significant government interest, leaving open ample alternative channels of expression. *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984). "The failure to satisfy any single prong of this test invalidates the requirement." *Grossman v. City of Portland*, 33 F.3d 1200, 1205 (9th Cir. 1994).

**[3]** A content-based regulation, on the other hand, is "presumptively unconstitutional," *S.O.C.*, 152 F.3d at 1145, and subject to strict scrutiny, *see Riley*, 487 U.S. at 798-801. "Content-based regulations pass constitutional muster only if they are the least restrictive means to further a compelling interest." *S.O.C.*, 152 F.3d at 1145. The City concedes in its briefing to our court that if the solicitation ordinance is content-based, it is facially invalid: "If the Panel in the second appeal had embraced the ACLU's content-based argument, the [solicitation] ordinance would have been facially invalid . . . ."

Thus, the initial question this case poses is whether the solicitation ordinance is content-based or content-neutral. *See Frisby v. Schultz*, 487 U.S. 474, 481 (1988) ("[T]he appropriate level of scrutiny is initially tied to whether the statute distinguishes between prohibited and permitted speech on the basis of content."). If the ordinance is content-neutral, we must determine whether it is narrowly tailored, serves a significant government interest, and leaves open ample alternative channels of expression. If the ordinance is content-based, it is presumptively invalid and we will uphold its constitutionality only if the City can demonstrate that it is the least restrictive means of furthering a compelling government interest.

**2.**

"Solicitation" is defined broadly by the Las Vegas Municipal Code to include "ask[ing], beg[ging], solicit[ing] or plead-[ing], whether orally, or in a written or printed manner, for the purpose of obtaining money, charity, business or patronage, or gifts of items of value for oneself or another person or organization." LVMC § 10.44.010(A). Counsel for the City has indicated that the ban on solicitation covers more than requests for in-hand monetary donations, and the district court confirmed this interpretation of the ordinance. Whereas hand-bills that simply offer information, or offer information and a contact number, are permitted, handbills requesting that the recipient "join us" or soliciting future donations are prohibited.

**[4]** The Supreme Court has explained:

> The principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys. The government's purpose is the controlling consideration. A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others. Government regulation of expressive activity is content neutral so long as it is "*justified* without reference to the content of the regulated speech."

*Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (quoting *Clark*, 468 U.S. at 293). That said, we are not required to find a content-based purpose in order to hold that a regulation is content-based. *See Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 642 (1994). "[T]he mere assertion of a content-neutral purpose [is not] enough to save a law which,

on its face, discriminates based on content." *Id.* at 642-43. Rather, "[a]s a general rule, laws that by their terms distinguish favored speech on the basis of the ideas or views expressed are content based." *Id.* at 643. Thus we will hold that the solicitation ordinance is content-based if either the main purpose in enacting it was to suppress or exalt speech of a certain content, or it differentiates based on the content of speech on its face. *See City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 429-30 (1993).

The district court concluded from the uncontroverted evidence that the City had the following intent in passing the solicitation ban: "(1) [to] protect potential visitors from solicitors in an environment where the freedom of movement is restricted; (2) [to] accommodate and encourage the safe, efficient, and orderly movement of pedestrians; and (3) [to] protect the local merchant economy." 2005 Order at 6. According to the district court, "[n]one of these interests concerns the content of speech, and there is no evidence in the record that the ordinance was designed to suppress certain ideas that the City finds distasteful." *Id.* Of course, there exists the possibility that solicitation was targeted because, as the record indicates, in downtown Las Vegas it generally concerns requests for money by the homeless or vagrants and requests for patronage of sex-based businesses. However, Plaintiffs have not presented evidence to raise a genuine issue of material fact regarding the City's motivation for enacting the solicitation ordinance, and the uncontroverted evidence supports that the ordinance was enacted with the purpose of controlling the secondary effects of solicitation, rather than the content of the soliciting requests themselves. We "will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive." *United States v. O'Brien*, 391 U.S. 367, 383 (1968).

**[5]** Because the record indicates that the solicitation ordinance was not enacted with the purpose of suppressing speech with certain content, whether the ordinance is content-based

hinges on whether it discriminates based on content on its face. We hold that it does. The record is crystal clear that handbills containing certain language may be distributed in the Fremont Street Experience, while those containing other language may not. In order to enforce the regulation, an official "must necessarily examine the content of the message that is conveyed." *Forsyth County, Ga. v. Nationalist Movement*, 505 U.S. 123, 134 (1992) (quotation marks omitted). Handbills with certain content pass muster; those requesting financial or other assistance do not. Even if this distinction is innocuous or eminently reasonable, it is still a content-based distinction because it "singles out certain speech for differential treatment based on the idea expressed." *Foti v. City of Menlo Park*, 146 F.3d 629, 636 n.7 (9th Cir. 1998).

Although courts have held that bans on the *act of solicitation* are content-neutral, we have not found any case holding that a regulation that separates out *words of solicitation* for differential treatment is content-neutral. *See, e.g.*, *United States v. Kokinda*, 497 U.S. 720, 736 (1990) (plurality opinion) (holding that a ban on in-hand solicitation of money is content-neutral based on "the inherent nature of solicitation itself"); *id.* at 738-39 (Kennedy, J., concurring) (emphasizing that the regulation permits the distribution of literature soliciting support); *ACORN v. City of Phoenix*, 798 F.2d 1260, 1267-68, 1271 (9th Cir. 1986) (holding that a ban on in-hand solicitation from automobiles, that does not cover distribution of literature requesting contributions, is content neutral).[10] In

---

[10]*See also Gresham v. Peterson*, 225 F.3d 899, 905-06 (7th Cir. 2000) (assuming without deciding that a ban on requests for immediate donations in public places is content-neutral); *Smith v. City of Fort Lauderdale, Fla.*, 177 F.3d 954, 956 (11th Cir. 1999) (assuming without deciding that a ban on soliciting, begging, and panhandling that appears to pertain only to requests for immediate donations is content-neutral); *Perry v. Los Angeles Police Dep't*, 121 F.3d 1365, 1369 (9th Cir. 1997) (assuming without deciding that a ban on sales and solicitation of donations that appears to pertain only to in-hand sales and solicitations is content-neutral); *cf. Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 648-49 (1981) (holding that a ban on solicitation of funds *as well as* distribution or sale of written materials is content-neutral).

other cases, the Supreme Court and our court have found bans on certain *manner* of expression or expressive *conduct* content-neutral. *See, e.g.*, *Turner*, 512 U.S. at 645 (holding that rules that distinguish "based only upon the manner in which speakers transmit their messages to viewers, and not upon the messages they carry" are content-neutral); *G.K. Ltd.*, 436 F.3d at 1075 (holding that a regulation on the size and type of signs permitted in a city is not content-based); *Honolulu Weekly, Inc. v. Harris*, 298 F.3d 1037, 1044 (9th Cir. 2002) (holding that an ordinance requiring distribution of publications from specified newsracks based on whether or not they charge their readers is content-neutral because "the city targeted the *manner* in which [they are] distributed, not the content of [their] message[s]"); *One World One Family Now v. City and County of Honolulu*, 76 F.3d 1009, 1012 (9th Cir. 1996) (holding that a ban on the sale of all merchandise, including message-bearing merchandise, on city streets is content-neutral).[11] In none of these cases did a court hold that a regulation that distinguishes based on the printed content of a message is content-neutral.

By contrast, the cases most directly on point support Plaintiffs' contention that Las Vegas's solicitation ordinance is content-based. In *ISKCON*, the Supreme Court upheld a ban on solicitation in an airport terminal. According to the Court, the terminal was a nonpublic forum; the majority therefore

---

[11]*See also Hill v. Colorado*, 530 U.S. 703, 719 (2000) (holding that a ban on approaching within eight feet of another person outside an abortion clinic for the purpose of giving them information, protesting, or counseling is content-neutral because "it is not a 'regulation of speech[ ]' [but] [r]ather, it is a regulation of the places where some speech may occur"); *Menotti*, 409 F.3d at 1129 (holding that a ban on accessing portions of downtown Seattle during World Trade Organization conference "was not a regulation of speech content, but rather was a regulation of the places where some speech may occur" (internal quotation marks omitted)); *Colacurcio v. City of Kent*, 163 F.3d 545, 551-53 (9th Cir. 1998) (holding that a ten-foot distance requirement between nude dancers and patrons is content-neutral where it does not distinguish between types of dancing).

did not consider whether the regulation was content-based. *See ISKCON*, 505 U.S. at 679, 683. Concurring, Justice Kennedy addressed head on the issue in the present case. Justice Kennedy applied public forum analysis and found the regulation content-neutral because it prohibited only requests for in-hand donations. *See id.* at 693, 704-09 (Kennedy, J., concurring). It was "directed only at the physical exchange of money, which is an element of conduct interwoven with otherwise expressive solicitation." *Id.* at 705. Justice Kennedy was clear, however, that if the "solicitation regulation prohibited all speech that requested contribution of funds, [he] would conclude that it was a direct, content-based restriction of speech in clear violation of the First Amendment." *Id.* at 704. Because the regulation permitted "the distribution of pre-addressed envelopes along with a plea to contribute money," it limited only the "manner" of expression, not the content. *Id.* at 704-05.

In *S.O.C.*, our court considered a ban on "off-premises canvassing" on the Las Vegas Strip. The ban applied to the distribution of literature that advertised or promoted services or goods or otherwise proposed a commercial transaction. *S.O.C.*, 152 F.3d at 1140 n.3. As we explained,

> the Clark County Ordinance refers to the content of speech; it regulates handbills that "propose one or more commercial transactions." The Ordinance targets and restricts the distribution of material containing *some* commercial information. The Ordinance's ban against "off-premises canvassing" in the Las Vegas Resort District does not prohibit the distribution of handbills that contain no commercial advertising. As a result, an officer who seeks to enforce the Clark County Ordinance would need to examine the contents of the handbill to determine whether its distribution was prohibited.

*Id.* at 1145. We held that the "off-premises canvassing" ordinance was content-based. *Id.*

*S.O.C.* is analogous to the present case. It is the practice of City officials to examine the content of handbills in the Fremont Street Experience before deciding whether they permissibly may be distributed. An ordinance is content-based if "a law enforcement officer must read a [printed communication's] message to determine if the [printed communication] is exempted from the ordinance." *Foti*, 146 F.3d at 636.[12]

---

[12]There is some ambiguity in the case law over the value of the "officer must read it" test. In *Forsyth*, the Supreme Court held that a regulation was content-based because, in order to enforce it, "the administrator must necessarily examine the content of the message that is conveyed." *Forsyth*, 505 U.S. at 134 (internal quotation marks omitted). More recently, the Supreme Court explained that it would not be improper for an officer to "look at the content of an oral or written statement in order to determine whether a rule of law applies to a course of conduct." *Hill*, 530 U.S. at 721. For example, the Hill Court emphasized that a cursory review of that sort—such as to determine whether a person approaching within eight feet of another outside an abortion clinic is engaging in "oral protest" or just saying "good morning"—would not be problematic. *Id.* at 720-22.

Although we applied the "officer must read it" test in *S.O.C.* and *Foti*, in *G.K. Ltd.*, we recognized a limitation to it. The *G.K. Ltd.* court analyzed two provisions of a sign-regulating law and determined that they were content-neutral in part because "neither requires law enforcement officers to 'read a sign's message to determine if the sign is exempted from the ordinance.' " *G.K. Ltd.*, 436 F.3d at 1078 (quoting *Foti*, 146 F.3d at 636). Thus we applied the "officer must read it" test. Regarding a third "grandfather clause" provision, however, plaintiffs argued that officers would have to examine the content of a sign to see if it had changed and was subject to new regulations. *Id.* We refused "to broaden *Foti* to stand for the proposition that any time an ordinance requires a law enforcement officer to read a sign, the ordinance must be content based." *Id.* Rather, we held that officers having to read a sign is persuasive but not dispositive evidence of a content-based purpose. *Id.* We explained that Lake Oswego officers "have to read signs only to determine whether the text of the sign or a logo on the sign has changed" and noted that "even those who speak no English could perform this superficial review function by placing the former sign next to the new sign." *Id.* at 1078-79. We distinguished *Foti* as requiring an officer to "evaluate the substantive message" of a communication. *Id.* at 1079.

The exceptions to the "officer must read it" test identified in *Hill* and *G.K. Ltd.* do not apply in the present case, where officers must evaluate the substantive content of a message to know whether the solicitation ordinance applies.

**[6]** The City has not chosen to ban only the act of solicitation; rather it has prohibited messages that contain soliciting content. *S.O.C.* therefore controls, and Justice Kennedy's concurrence in *ISKCON* informs, our decision. We hold that the solicitation ordinance is content-based. "Under the city's [solicitation] policy, whether any particular [communication] falls within the ban is determined by the content of the [communication]. Thus, by any commonsense understanding of the term, the ban in this case is 'content based.' " *Discovery Network*, 507 U.S. at 429.[13]

**3.**

**[7]** As the City concedes, the solicitation ordinance cannot survive strict scrutiny. It prohibits even the peaceful, unobstructive distribution of handbills requesting future support of a charitable organization. Because the ordinance does not represent the least restrictive means of achieving the City's stated goals of protecting potential visitors from aggressive or intrusive solicitation, eliminating obstructions to the free move-

---

[13]Even if the solicitation ordinance were content-neutral, it would still be an invalid time, place, and manner regulation. The ordinance is not narrowly tailored to further the City's substantial interests in protecting the local merchant economy, *see Perry*, 121 F.3d at 1369, "assuring safe and convenient circulation on [its] streets," *One World*, 76 F.3d at 1013, and "preventing solicitors from harassing pedestrians on public streets and sidewalks," *S.O.C.*, 152 F.3d at 1146. A time, place, or manner regulation must "target[ ] and eliminate[ ] no more than the exact source of the 'evil' it seeks to remedy. To be narrowly tailored, a statute need not be the least restrictive means of furthering the government's interests, but the restriction may not burden substantially more speech than necessary to further the interests . . . ." *Menotti*, 409 F.3d at 1130-31 (alterations, citations, and internal quotation marks omitted). The solicitation ordinance targets more than the source of "evil" identified in the record and relied upon by the City in support of its restriction. The record indicates that aggressive panhandling, solicitation, and handbilling were the problems confronted by the City. Yet the solicitation ordinance targets a substantial amount of constitutionally protected speech that is not the source of the "evils" it purports to combat. The ordinance therefore would fail the time, place, and manner test even if it were content-neutral.

ment of pedestrians, and protecting the local merchant economy,[14] it is not narrowly tailored to achieve a compelling government interest. *See S.O.C.*, 152 F.3d at 1145 ("Content-based regulations pass constitutional muster only if they are the least restrictive means to further a compelling interest."). The solicitation ordinance is a facially unconstitutional regulation of the right to free speech protected by the First Amendment. It cannot stand.[15]

---

[14]Although our cases indicate that protecting the local merchant economy is a substantial government interest, we question whether this interest could ever be compelling. Commercial speech occupies a subordinate position to noncommercial speech under our Constitution. *See Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 505-08 (1981) (plurality opinion). We are troubled by Defendants' attempt to elevate commercial speech over political speech and other noncommercial expressive activities. We recognize the City's legitimate economic concerns and its interest in the success of the Fremont Street Experience. "Economic necessity, however, cannot provide the cover for government-supported infringements of speech." *Bock v. Westminster Mall Co.*, 819 P.2d 55, 61 (Colo. 1991). Defendants argue that the success of the Fremont Street Experience hinges on its ability to attract businesses to the area. But as the Tenth Circuit explained in a similar case, the interests of a private business or organization cannot trump the public's interest in free speech:

> The City contends that acquiescing to the LDS Church's demand to control speech on the easement was necessary to obtain the Church's agreement to buy the property. That may be true, but the City may not exchange the public's constitutional rights even for other public benefits such as the revenue from the sale, and certainly may not provide a public space or passage conditioned on a private actor's desire that that space be expression-free.

*First Unitarian Church*, 308 F.3d at 1132.

[15]Because we hold that the solicitation ordinance is unconstitutional on First Amendment grounds, we need not address Plaintiffs' alternate argument that, to the extent FSELLC permits solicitation in the Fremont Street Experience, the ordinance violates the Fourteenth Amendment's Equal Protection Clause because no standards govern FSELLC's discretion.

**B.**

Plaintiffs claim that Las Vegas's prohibition on erecting tables in the Fremont Street Experience unconstitutionally violates their Fourteenth Amendment rights to equal protection of the laws because labor-related activities are exempted from the ordinance's reach. *See* LVMC § 11.68.100. Plaintiffs bring both facial and as-applied challenges. On remand to the district court in *ACLU I*, we noted that Plaintiffs would have to demonstrate that the erection of tables constitutes protected First Amendment activity in order to prevail on their equal protection claim. *ACLU I*, 333 F.3d at 1108. The district court, however, did not address the First Amendment question and proceeded directly to the equal protection analysis. This was error because the level of scrutiny that we apply to an equal protection claim varies depending on the nature of the right at issue.[16] If Plaintiffs' use of tables is protected by the First Amendment, the City may only draw distinctions in the ordinance that are finely tailored to serve substantial interests. *See Carey v. Brown*, 447 U.S. 455, 461-62 (1980); *Perry,* 121 F.3d at 1368. If, however, there is no First Amendment right at issue, the City need only proffer a rational basis for the regulation. *See Tutor-Saliba Corp. v. City of Hailey*, 452 F.3d 1055, 1061 (9th Cir. 2006).

**1.**

[8] We therefore must decide whether Plaintiffs' use of portable tables in the Fremont Street Experience constitutes free speech. This is an issue of first impression for our circuit. No Supreme Court or Ninth Circuit case has determined whether the use of portable tables to distribute literature is protected by the First Amendment. Of our sister circuits, only the Eleventh Circuit has addressed this issue directly.[17] In *Int'l*

---

[16]The level of scrutiny also varies when a regulation targets a protected class of persons. *See City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985). This sort of equal protection claim is not before us.

[17]The Seventh Circuit has considered restrictions on tabling in public fora, but has not directly addressed whether the use of tables to facilitate

*Caucus of Labor Comms. v. City of Montgomery*, 111 F.3d
1548 (11th Cir. 1997) (per curiam), the Eleventh Circuit con-
sidered the constitutionality of a Montgomery, Alabama pol-
icy of banning tables from city sidewalks. The court held that
this policy regulated expressive activity. *Id.* at 1550; *see also
One World One Family Now v. City of Miami Beach*, 175
F.3d 1282, 1286 (11th Cir. 1999) ("[O]ur precedent estab-
lishes that tables used to distribute protected literature come
within the protection of the First Amendment.").

In a case analogous to the one at bar, a district judge in our
circuit came to the same conclusion. *One World One Family
Now, Inc. v. Nevada*, 860 F. Supp. 1457 (D. Nev. 1994).
Plaintiffs in *One World*, nonprofit organizations, were prohib-
ited from placing tables, chairs, umbrellas, boxes, and signs
on public sidewalks adjacent to Las Vegas Boulevard. *Id.* at
1460. They wished to use these items to sell T-shirts with
political, religious, philosophical, and ideological messages.
*Id.* In a thoughtful opinion, the district court granted plain-
tiffs' motion for a preliminary injunction against the ban on
tabling, analogizing plaintiffs' use of tables to the use of
newsracks by newspaper publishers to disseminate protected
speech. *Id.* at 1462-63. The district court held "that use of por-
table tables as a means of disseminating message-bearing T-
shirts is entitled to First Amendment protection." *Id.* at 1462.
The court also found that the plaintiffs' use of signs facilitated

─────────────────────────────

speech falls within the ambit of the First Amendment's protection. In *Int'l
Soc'y for Krishna Consciousness, Inc. v. Rochford*, 585 F.2d 263, 270 (7th
Cir. 1978), the court held that a restriction on erecting tables in an airport
did not *facially* restrict First Amendment activity. Plaintiffs had not chal-
lenged the regulation. *Id.* In *Int'l Caucus of Labor Comms. v. City of Chi-
cago*, 816 F.2d 337, 339 (7th Cir. 1987), the Seventh Circuit assumed that
plaintiffs' tabling activities were protected speech, stating that "[t]here has
been no contention that plaintiffs' activities are not protected by the First
Amendment," and invoking the time, place, and manner test. The court
upheld the tabling regulation because plaintiffs did not plead any facts to
demonstrate its invalidity. *Id.*

their message and was protected by the First Amendment. *Id.* at 1463.

**[9]** By contrast, the district court denied plaintiffs' motion for a preliminary injunction against the ban on chairs, umbrellas, and boxes. As the court explained,

> [t]he use of tables on public sidewalks is protected only to the extent that its use "facilitates" the exercise of expressive activities. For example, placing a table on a public sidewalk to sell ice cream is not entitled to protection under the First Amendment because the table's use in this context is not for expressive purposes. In the case at bar, the use of the tables clearly facilitates the dissemination of Plaintiffs' message because it allows Plaintiffs to display their message-bearing T-shirts to the public.
>
> In contrast, the chairs, umbrellas, and boxes do not possess a similar nexus to the facilitation of Plaintiffs' message. Plaintiffs have failed to demonstrate how these items are used to facilitate their message other than to provide comfort and convenience of vendors who attend to the tables. . . . Consequently, the Court finds that it is unlikely that Plaintiffs will succeed in demonstrating that the use of chairs, umbrellas, and boxes on public sidewalks should be characterized as "expressive" and therefore entitled to First Amendment protection.

*Id.* (citation omitted).

**[10]** The district court's reasoning in *One World* is persuasive. We hold that the erection of tables in a public forum is expressive activity protected by our Constitution to the extent that the tables facilitate the dissemination of First Amendment speech. We agree that use of portable tables is analogous to access to newsracks—similarly temporary structures used to

disseminate speech-related materials—which is protected by the First Amendment. *See City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750 (1988); *Honolulu Weekly*, 298 F.3d 1037. To the extent LVMC § 11.68.100(H) prohibits erecting tables that are used to facilitate the dissemination of protected speech, it is an infringement of First Amendment rights.

There is no genuine issue of material fact as to whether Plaintiffs sought to erect a table in the Fremont Street Experience to facilitate protected First Amendment activity. In October, 2000, ACLU members set up a table in the Fremont Street Experience, on which they placed petitions and from which they hung a banner with the ACLU logo. Plaintiffs were not selling ice cream from the table; rather they were attempting to use the table to facilitate their expressive activities. Security officers forced the members to remove the table.

In prohibiting these members from using their table, Defendants were regulating protected speech. However, not all limitations on free speech are impermissible. Plaintiffs argue that the tabling ordinance is unconstitutional because it regulates their expressive conduct in violation of the Equal Protection Clause of the Fourteenth Amendment. We consider that claim in light of our conclusion that the ordinance applies to expressive activity.

**2.**

**[11]** Because we hold that the tabling ordinance regulates First Amendment speech in a traditional public forum, any distinctions the ordinance draws must be finely tailored to serve the substantial interests of the City. *Carey*, 447 U.S. at 461-62. Las Vegas's tabling ordinance contains an exception for labor-related speech. *See* LVMC § 11.68.100. Plaintiffs argue that this exception renders the tabling ordinance uncon-

stitutional because it violates the Fourteenth Amendment's Equal Protection Clause. We agree.**¹⁸**

**[12]** The exception for labor-related speech is indistinguishable from the labor exemptions struck down by the Supreme Court in *Police Dep't v. Mosley*, 408 U.S. 92 (1972), and *Carey v. Brown*, 447 U.S. 455 (1980). In *Mosley*, the Court considered a Chicago city ban on picketing near schools, which contained an exception for labor picketing. Addressing the plaintiff's claim that this exception violated his equal protection rights, the Court found that "[t]he central problem with Chicago's ordinance is that it describes permissible picketing in terms of its subject matter." *Id.* at 95. It "thus slips from the neutrality of time, place, and circumstance into a concern about content. This is never permitted." *Id.* at 99 (footnote, alteration, and internal quotation marks omitted).

Similarly, in *Carey* the Court considered an Illinois statute that banned the picketing of residences, but contained an exception for labor-related picketing. The Court found that the statute "discriminates between lawful and unlawful conduct based upon the content of the demonstrator's communication. On its face, the Act accords preferential treatment to the expression of views on one particular subject; information about labor disputes may be freely disseminated, but discussion of all other issues is restricted." *Carey*, 447 U.S. at 460-61 (footnote omitted). The Court held that the statute ran afoul of the Fourteenth Amendment's guarantee of equal protection of the laws for the same reasons it articulated in *Mosley*. *Id.* at 461.

**[13]** *Mosley* and *Carey* are directly on point. We affirm the

---

**¹⁸**We express no view as to whether the tabling ordinance would be a constitutionally invalid restriction on the time, place, and manner of Plaintiffs' free speech in a traditional public forum in the absence of the labor exemption.

district court's holding that the City's tabling ordinance, as applied to Plaintiffs, violates the Equal Protection Clause.

**3.**

**[14]** We decline to hold, however, that the tabling ordinance is facially unconstitutional. On its face, the ordinance does not regulate expressive activity. In *ACLU I*, we noted "that tables often are used in association with core expressive activity," 333 F.3d at 1108 n.15, but suggested that Plaintiffs' tabling claim would benefit from further exploration of the factual record on remand, *id.* at 1108. Plaintiffs chose not to submit additional evidence. Although the record is sufficiently clear for us to hold that the tabling ordinance is unconstitutional as applied to Plaintiffs' expressive activities, nothing in the record indicates that tables are used in the Fremont Street Experience for expressive purposes with enough frequency to support Plaintiffs' facial challenge to the ordinance. Plaintiffs have not argued that the tabling ordinance is facially invalid when applied to nonexpressive conduct. We therefore affirm the district court's ruling that LVMC § 11.68.100(H) is facially constitutional.[19]

**IV.**

We hold that Las Vegas's solicitation ordinance is facially unconstitutional. The ordinance regulates protected speech based on its content but is not the least restrictive means of furthering a compelling government interest. It therefore is an impermissible restriction on First Amendment activity. We also hold that the City's tabling ordinance is unconstitutional

---

[19]Plaintiffs also claim that the district court abused its discretion in denying them leave to amend their complaint to challenge the City's ordinance prohibiting parades in the Fremont Street Experience. *See* LVMC § 11.68.100(C). Plaintiffs sought to amend on remand after our decision in *ACLU I*. In light of the circumstances surrounding this proposed amendment, we hold that the district court did not abuse its discretion in denying Plaintiffs' motion.

as applied to Plaintiffs, to the extent that it regulates the use of tables to facilitate the dissemination of protected speech. The ordinance contains an exception for labor-related tabling in violation of the Equal Protection Clause of the Fourteenth Amendment. We remand to the district court with instructions to issue the appropriate injunctions.

In appeal No. 05-15667, we **REVERSE** the judgment of the district court. In appeal No. 05-15767, we **AFFIRM** the judgment of the district court. **REMANDED**.