Hector LOPEZ, et al., Plaintiffs,

v.

TOWN OF CAVE CREEK, ARIZONA, et al., Defendants.

No. CV 08–566–PHX–ROS.

United States District Court, D. Arizona.

June 2, 2008.

Kristina Michelle Campbell, Cynthia Valenzuela, MALDEF, Los Angeles, CA, Monica M. Ramirez, Cecillia D. Wang, ACLU, San Francisco, CA, Daniel Joseph Pochoda, ACLU, Phoenix, AZ, for Plaintiffs.

Scot L. Claus, Mariscal Weeks McIntyre & Friedlander, P.A., Phoenix, AZ, for Defendants.

## ORDER; FINDINGS OF FACT AND CONCLUSIONS OF LAW

ROSLYN O. SILVER, District Judge.

Before the Court is Plaintiffs' Motion for a Preliminary Injunction. For the reasons stated herein, this motion will be granted.

## BACKGROUND

On September 24, 2007, the Town of Cave Creek, Arizona (the "Town") adopted Section 72.17(C) of the Town Code, which went into effect on October 24, 2007. Section 72.17(C) makes it unlawful for "[any] person [ ] to stand on or adjacent to a street or highway and solicit, or attempt to solicit, employment, business or contributions from the occupant of any vehicle" (the "Ordinance"). A violation of the Ordinance constitutes a civil traffic offense, which can result in a civil penalty not to exceed $250. Town Code § 10.99(B).

Plaintiffs are day laborers who have obtained and desire to continue to obtain employment in ways prohibited by the Ordinance. Plaintiffs claim that the Ordinance violates their First and Fourteenth Amendment rights to free speech and seek to enjoin its enforcement.

## STANDARD OF REVIEW

The Ninth Circuit has set forth two approaches for evaluating a request for a preliminary injunction: traditional and alternative. *The Freecycle Network, Inc. v. Oey,* 505 F.3d 898 (9th Cir.2007). Under the traditional approach, Plaintiffs must demonstrate: (1) a strong likelihood of success on the merits; (2) the possibility of irreparable injury; (3) the balance of hardships tips in their favor; and (4) advancement of the public interest. *Center for Biological Diversity v. Rey,* No. 07–16892, 2008 WL 2051072, at *1 (9th Cir. May 14, 2008). The alternative test requires Plaintiffs to demonstrate: (1) a combination of probable success on the merits and the possibility of irreparable injury; or (2) that serious questions are raised and the balance of hardships tips sharply in his favor. "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases. They are not separate tests but rather outer reaches of a single continuum." *In re Excel Innovations, Inc.,* 502 F.3d 1086, 1093 (9th Cir.2007).

## ANALYSIS

### I. Plaintiffs Have Demonstrated Probable Success on the Merits.

"It is beyond dispute that solicitation is a form of expression entitled to the same constitutional protections as traditional speech," *ACLU v. City of Las Vegas,* 466 F.3d 784, 792 (9th Cir.2006) ("*ACLU II*"), and that streets and sidewalks are traditional public forums, *Frisby v. Schultz,* 487 U.S. 474, 480, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988) ("[W] have repeatedly referred to public streets as the archetype of a

traditional public forum.") (collecting cases); *ACLU v. City of Las Vegas*, 333 F.3d 1092, 1099 (9th Cir.2003) ("*ACLU I*").

Because the Ordinance does not ban solicitation speech altogether, it is analyzed as a time, place, and manner regulation. The appropriate level of scrutiny, therefore, depends whether the Ordinance is content-based. If the Ordinance is content-based, it is presumptively unconstitutional, and must satisfy strict scrutiny, i.e. be the least restrictive means to further a compelling interest. *Perry Educ. Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 45, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983); *Long Beach Area Peace Network v. City of Long Beach*, 522 F.3d 1010, 1023–24 (9th Cir.2008); *ACLU II*, 466 F.3d at 792. If, on the other hand, the Ordinance is content-neutral, it must it must be narrowly tailored to serve a significant government interest, and leave open ample alternative channels of expression. *Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989); *Clark v. Cmty. for Creative Non–Violence*, 468 U.S. 288, 293, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984); *Long Beach*, 522 F.3d at 1022–23; *ACLU II*, 466 F.3d at 792. "The failure to satisfy any single prong of [the latter test] invalidates that requirement." *ACLU II*, 466 F.3d at 792 (quoting *Grossman v. City of Portland*, 33 F.3d 1200, 1205 (9th Cir.1994)).

### A. The Ordinance Is Unconstitutional Because It Is Content–Based and Fails Strict Scrutiny.

 "[A] solicitation ordinance is content-based if either the main purpose in enacting it was to suppress or exalt speech of a certain content, or it differentiates based on the content of speech on its face." *ACLU II*, 466 F.3d at 793; *see also Long Beach*, 522 F.3d at 1022–23 (quoting the same). Plaintiffs do not argue that the

Town enacted the Ordinance because of its disagreement with the message solicitation-speech conveys. Rather, Plaintiffs assert that the Ordinance is content-based because it bans only certain types of solicitation speech. The Court agrees with Plaintiffs.

In *ACLU II*, the Ninth Circuit found that a city ordinance banning solicitation "for the purpose of obtaining money, charity business or patronage, or gift or items of value for oneself or another person or organization" in particular areas of Las Vegas, Nevada was an impermissible content-based regulation. 466 F.3d at 796. The court agreed with the district court that "the ordinance was enacted with the purpose of controlling the secondary effects of solicitation, rather than the content of the soliciting requests themselves." *Id.* at 793.

The court nonetheless found that the regulation was content-based because, on its face, speech containing certain language was permissible, while other language was not. *Id.* at 794. "Under the city's [solicitation] policy, whether any particular [communication] falls within the ban is determined by the content of the [communication]. Thus, by any common-sense understanding of the term, the ban in this case is 'content based.'" 466 F.3d at 796 (quoting *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 429, 113 S.Ct. 1505, 123 L.Ed.2d 99 (1993)) (alterations in original).

Similarly, in this case, the Ordinance differentiates based on the content of speech on its face. It prohibits solicitation speech, but not political, religious, artistic, or other categories of speech. It also prohibits solicitation on the topics of "employment, business or contributions," while allowing solicitation of votes or ballot signatures. And, "[i]n order to enforce the regulation, an official 'must necessarily

examine the content of the message that is conveyed.'" *ACLU II,* 466 F.3d at 794 (quoting *Forsyth County, Ga. v. Nationalist Movement,* 505 U.S. 123, 134, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992)); *see also Glendale Assocs., Ltd. v. NLRB,* 347 F.3d 1145, 1155 (9th Cir.2003) "(A rule is defined as a content-based restriction on speech when the regulating party must examine the speech to determine if it is acceptable.").[1]

Defendants nonetheless maintain that the Ordinance is content-neutral because a similar regulation was held content-neutral by the Ninth Circuit in *ACORN v. City of Phoenix,* 798 F.2d 1260 (9th Cir.1986). In *ACORN,* the court considered a Phoenix, Arizona ordinance stating: "No person shall stand on a street or highway and solicit, or attempt to solicit, employment, business or contributions from the occupants of any vehicle." *Id.* at 1262. The Plaintiffs sought to enjoin enforcement of the ordinance against their practice of "tagging," which is stepping into the street and approaching an automobile when it is stopped at a red traffic light to solicit money. *Id.* The court's content-neutral analysis in its entirety was:

> On its face, the Phoenix ordinance does not single out any group or the content of any speech. The ordinance applies evenhandedly to every organization or individual, regardless of viewpoint, which would desire to solicit contributions, business, or employment from the occupants of vehicles traveling on Phoenix streets. Any argument that this ordinance was passed to suppress the particular political views expressed by ACORN is contradicted by the parties' own stipulation in the pretrial order that

the ordinance was adopted to promote the city's interest in "public peace, health and safety." The ordinance thus is "content-neutral."

*Id.* at 1267 (citations omitted).

Setting aside the argument that the court conflated viewpoint and content-based analyses, *ACORN* is distinguishable. First, the ordinance at issue in *ACORN* was "aimed narrowly at the disruptive nature of fund solicitation from the occupants of vehicles," which the *ACORN* court found "goes beyond pure speech." 798 F.2d at 1268, 1269. As the court recognized, in-hand solicitation differs from pure speech because "successful solicitation requires the individual to respond by searching for currency and passing it along to the solicitor. Even after the solicitor has departed, the driver must secure any change returned, replace a wallet or close a purse, and then return proper attention to the full responsibilities of a motor vehicle driver." *Id.* at 1268.

Second, the Ninth Circuit has subsequently characterized the regulation at issue in *ACORN* as one banning the act of solicitation, not the words of solicitation. *ACLU II,* 466 F.3d at 794 ("Although courts have held that bans on the *act of solicitation* are content-neutral, we have not found any case holding that a regulation that separates out *words of solicitation* for differential treatment is content-neutral.") (emphases in original) (citing *ACORN* and noting that it "[held] that a ban on in-hand solicitation from automobiles, that does not cover distribution of literature requesting contributions, is content neutral").

---

1. To the extent that Defendants argue that the need to examine the content of speech is an impermissible way to analyze whether a regulation is content-based under *Hill v. Colorado,* 530 U.S. 703, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000), the Court is bound by more recent Ninth Circuit precedent, which clearly holds that such analysis is permissible and required. *See ACLU II,* 466 F.3d at 794; *Glendale Assocs.,* 347 F.3d at 1155.

Unlike the regulation at issue in *ACORN*, the Ordinance is not limited to in-hand solicitation of funds, but rather bans the words of solicitation—verbal appeals for employment. *ACLU II* therefore controls, not *ACORN*, and the Ordinance is content-based.

Defendants have not asserted that the Ordinance can survive strict scrutiny, and the Court finds that it cannot. The Ordinance thus is an unconstitutional content-based restriction on free speech.

**B. Alternatively, the Ordinance Is Unconstitutional Because It Is Not Narrowly Tailored.**

Even if the Ordinance was content-neutral, it would still be an impermissible time, place, and manner regulation because the Ordinance is not narrowly tailored to further the Town's interests. The "narrow tailoring analysis starts with a view of the [Town's] interests." *Berger v. City of Seattle*, 512 F.3d 582, 599 (9th Cir.2008). If the Town's interests are substantial, the Court must determine whether the Ordinance "burden[s] substantially more speech than is necessary to further the government's legitimate interests." *Ward*, 491 U.S. at 799, 109 S.Ct. 2746. Although the Ordinance need not be "the least restrictive or intrusive means" of further the Town's interests, the Town "may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals." *Id.* at 798, 799, 109 S.Ct. 2746.

**i. The Town's Interest in Traffic Safety is Significant.**

The Town asserts that it has a significant governmental interest in traffic safety. The Court agrees. *See Kuba v. 1–A Agr. Ass'n*, 387 F.3d 850, 858 (9th Cir. 2004) (holding that traffic safety is a significant government interest) (collecting cases).

**ii. The Ordinance Does Not Promote the Asserted Interest In Traffic Safety.**

Merely invoking an interest in traffic safety, however, is insufficient. The Town must also provide evidence "that is reasonably believed to be relevant" that the Ordinance advances the asserted interest in traffic safety. *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 438, 122 S.Ct. 1728, 152 L.Ed.2d 670 (2002) (internal quotation marks omitted); *see also Menotti v. City of Seattle*, 409 F.3d 1113, 1131 (9th Cir.2005); *Kuba*, 387 F.3d at 859–61; *Edwards v. City of Coeur d'Alene*, 262 F.3d 856, 863–64 (9th Cir.2001). As the Supreme Court explained:

> That the Government's asserted interests are important in the abstract does not mean, however, that the [regulation] will in fact advance those interests. When the Government defends a regulation on speech as a means to redress past harms or prevent anticipated harms, it must do more than simply "posit the existence of the disease sought to be cured." It must demonstrate that the recited harms are real, not merely conjectural, and that the regulation will in fact alleviate these harms in a direct and material way.

*Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 664, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994).

The Town has provided no evidence that traffic safety is endangered by day laborers soliciting employment from vehicle occupants. Although the Town asserts that the minutes of the Town Council meetings held on June 18 and September 24, 2007 demonstrate that the Ordinance was adopted to address traffic safety concerns, not a single person at either hearing mentioned traffic safety. To the extent that people mentioned a "safety" concern, it appears to be in reference to the safety of

people from illegal immigrants, not traffic safety.[2] *See* Doc. 17, Exs. 3 & 4.

The Town also relies upon an affidavit from Marshal Adam Stein stating that he had received some complaints from local business owners that persons soliciting from roadways were interrupting traffic flow into and out of such businesses. *Id.*, Ex. 2. These complaints, though, relate to a concern about traffic flow, not traffic safety. *See ACORN*, 798 F.2d at 1268 (recognizing that orderly traffic flow is a separate governmental interest from traffic safety). And the Town has not asserted an interest in traffic flow. Moreover, there is no evidence that these complaints were presented to or considered by the Town Council in enacting the statute. Thus, the Town has not satisfied its burden that the Ordinance is necessary to advance its interest in traffic safety.

■■■■■ Even assuming that the Town provided sufficient support that the Ordinance advances its asserted interest in traffic safety, though, the Ordinance is still not narrowly tailored. "[Regulations] which disregard far less restrictive and more precise means are not narrowly tailored." *Project 80's, Inc. v. City of Pocatello*, 942 F.2d 635, 638 (9th Cir.1991); *see also City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 418 n. 13, 113 S.Ct. 1505, 123 L.Ed.2d 99 (1993); *Long Beach*, 522 F.3d at 1023–24; *Menotti*, 409 F.3d at 1131 n. 31; *Galvin v. Hay*, 374 F.3d 739, 753 (9th Cir.2004). There are

myriad of less restrictive means for the City to promote traffic safety, such as enforcement of existing traffic, parking, and loitering laws. *See* Town Code § 71.15, *et seq.* (traffic regulations); *Id.* § 72.15, *et seq.* (parking regulations); A.R.S. § 13–2905 (loitering). "The generally accepted way of dealing with unlawful conduct that may be intertwined with First Amendment activity is to punish it after it occurs rather than to prevent the First Amendment activity from occurring in order to obviate the possible unlawful conduct." *Collins v. Jordan*, 110 F.3d 1363, 1371–72 (9th Cir.1996).

Thus, the Court finds that the Ordinance is not narrowly tailored to serve the Town's interest in traffic safety. In so doing, it joins the other district courts in the Ninth Circuit, which have uniformly so found similar anti-solicitation ordinances. *See Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 475 F.Supp.2d 952, 966 (C.D.Cal.2006); *Comite de Jornaleros de Glendale v. City of Glendale*, No. CV 04–3521, at 9 (C.D.Cal. May 13, 2005); *Coalition for Humane Immigrant Rights of Los Angeles (CHIRLA) v. Burke*, No. CV 98–4863, 2000 WL 1481467, at *10 (C.D.Cal. Sept. 12, 2000).

\*　　\*　　\*

In conclusion, Plaintiffs have demonstrated probable success on their claim that the Ordinance is an unconstitutional time, place, and manner restriction.[3] The

---

**2.** For example, relevant excerpts from the June 18, 2007 Minutes, (Doc. 17, Ex. 3), include:

> Rep. Russell Pearce: "There are 84 cities that are in the process of doing something about the illegal alien invasion. . . . He quoted from the Steve King report in Congress with 9,000 American skilled every year at the hands of illegal aliens. . . . It is a Federal Law, not a Federal issue. . . . When we harbor, aid, abet, encourage, solicit, and provide opportu-

nities, just like amnesty, then we create more law breakers. The impact here is huge. Arizona is # 1 in crime, 2nd most violent State in the Nation. . . . "

> Town Council Member Ernie Bunch: "He felt that anytime there is a group of people that don't have roots in the area and who are hanging around it is a recipe for disaster. We need to do something."

**3.** In addition to asserting that the Ordinance is an unconstitutional time, place, and man-

Ordinance is a content-based regulation, which fails strict scrutiny. In the alternative, the Ordinance is a content-neutral regulation that is not narrowly tailored to serve a significant government interest.

## II. Plaintiffs Have Established Irreparable Harm.

██ Plaintiffs have demonstrated the possibility of irreparable harm. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *see also Warsoldier v. Woodford*, 418 F.3d 989, 1002 (9th Cir. 2005); *Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 973 (9th Cir.2002). Plaintiffs, as day laborers, face not only the loss of First Amendment freedoms, but also the loss of employment opportunities necessary to support themselves and their families.

## III. Conclusion

Because Plaintiffs have demonstrated a combination of probable success on the merits and the possibility of irreparable harm, a preliminary injunction will issue.

Accordingly,

**IT IS ORDERED** that Plaintiffs' Motion for a Preliminary Injunction (Doc. 3) is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendants, as well as their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them, are **ENJOINED AND RESTRAINED** from giving any effect to or otherwise taking any action to enforce

Section 72.17(C) of the Town of Cave Creek Code.

---

ner restriction, Plaintiffs assert that the Ordinance is unconstitutionally vague. Because the Court finds Plaintiffs likely to succeed under the time, place, and manner theory, it declines to address the Ordinance's alleged vagueness.